Neal Weingart, Esq.
1001 SW Fifth Ave.
Suite 1415
Portland, Oregon 97204
Tel: 503-379-9933
Email: neal@nealweingartlaw.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| DANIEL WALKER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FRED MEYER, INC., a Delaware corporation,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Walker ("Plaintiff" or "Walker") brings this class action complaint against Defendant Fred Meyer, Inc. ("Defendant" or "Fred Meyer") to obtain redress for, and put an end to, Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA" or "Act"), specifically its failure to provide lawful notices and disclosures to its job applicants and employees. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly acts to protect both applicants for employment and existing employees from adverse employment action taken as a result of potentially inaccurate or immaterial information. To that end, employers who obtain and use consumer reports regarding their applicants and employees are required to provide: (1) standalone disclosures prior to obtaining consumer reports in the first place, and (2) copies of the reports they obtain and a summary of rights under the Act *prior* to taking any adverse employment action against the applicants/employees based on information contained in such reports.

2.      Defendant Fred Meyer willfully violates the FCRA by: (1) failing to provide a standalone up-front notice that Defendant may procure consumer reports about its applicants and employees, and (2) failing to provide its applicants and employees with proper copies of such reports and the required summaries of their FCRA rights before taking adverse action against them.

3.      First, on information and belief, Defendant fails to provide its applicants or employees with a standalone disclosure that indicates Defendant may obtain a consumer report about them for employment purposes. Section 1681b(b)(2) establishes that such disclosure must be made "in a document that consists solely of the disclosure." Here, Defendant provides not one, but three disclosures, with each disclosure containing unnecessary, extraneous, and unlawful information. It is confusing to Plaintiff and other consumers and therefore fails to standalone. That is, on information and belief, the disclosures and authorizations are combined with unrelated information. This violates Section 1681b(b)(2)(A)(i) of the FCRA, which unambiguously states that the disclosure must be made "in a document that consists solely of the disclosure."

4.      Defendant has also willfully violated the FCRA by procuring background checks

and consumer reports about its job applicants and employees without providing such appli-

cants/employees with adequate "pre-adverse action" notice prior to taking adverse action—in-

cluding firing its employees. Instead, Defendant provides applicants and employees with adverse

action notices that fail to apprise such applicants/employees of their right to contact Defendant in

the event that errors exist on the consumer report. As a consequence of these deficient pre-ad-

verse action notices, applicants and employees are left without an adequate opportunity to rem-

edy issues contained within their consumer reports, which defeats the purpose of the pre-adverse

action requirement under the FCRA. As such, Defendant serially violates the FCRA.

5.      As a result of Defendant's willful violations of the FCRA, employees and appli-

cants such as Plaintiff Walker are deprived of rights, including privacy rights guaranteed to them

by federal law, and are thus entitled to statutory damages of at least $100 and not more than

$1,000 for each violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## PARTIES

6.      Plaintiff Daniel Walker is a natural person and citizen of the State of Oregon. He

resides in Portland, Oregon.

7.      Defendant Fred Meyer, Inc. is a Delaware corporation with its principal place of

business located at 3800 SE 22nd Ave., Portland, Oregon 97202.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this ac-

tion arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., which is a federal stat-

ute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. §

1332(d), *et seq.* because the classes each consist of over 100 people, at least one member of each

class is from a State other than Oregon (the state of Defendant), and the amounts in controversy

are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

9.      This Court has personal jurisdiction over Defendant because it conducts business

in this District, is headquartered and registered to do business in this District, and the unlawful

conduct alleged in the Complaint emanated from this District.

10.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is

headquartered in this District, and Plaintiff's claims arose in substantial part out of corporate ac-

tions and policies that were decided upon within this District and which have emanated from this

District.

**FACTS COMMON TO PLAINTIFF AND ALL COUNTS**

11.      Fred Meyer is a privately-held supermarket chain based in Portland, Oregon.

12.      Fred Meyer was founded in 1922 and now has more than 130 store locations in

Oregon, Washington, Idaho, and Alaska.

13.      In or around March 2017, Plaintiff Walker applied for a job with Fred Meyer us-

ing Fred Meyer's online application process.

14.      Shortly after applying, Plaintiff was hired by Fred Meyer as an associate at one of

Fred Meyer's Portland, Oregon stores. This job was not one regulated by the Department of

Transportation.

15.      Upon beginning his employment, Plaintiff was required to complete various

acknowledgements of company disclosures including a series of disclosures regarding Plaintiff's

background and criminal history.

16.      Rather than provide a standalone disclosure—as the FCRA requires—Fred Meyer

provides three separate disclosures regarding the procurement of background information.

17.    First, Fred Meyer provides applicants, such as Plaintiff, with a document consisting of three separate disclosures titled: (1) Candidate Job Profile Acknowledgment, (2) Background and Drug Screen Acknowledgement, and (3) Background Information.

18.    Next, Fred Meyer requires applicants to complete a document titled, "Authorization Regarding Consumer Reports and Investigative Consumer Reports" which purports to grant Fred Meyer substantial authority to procure information about applicants from essentially any private or public source and provides authorization to third parties to release information to Fred Meyer's background check company.

19.    Finally, Fred Meyer provides applicants with a document titled, "Disclosure Regarding Consumer Reports and Investigative Consumer Reports" which authorizes Fred Meyer's agent General Information Services, Inc. ("GIS") to procure a consumer report regarding the applicant.

20.    The disclosures provided by Fred Meyer were confusing to Plaintiff and the average consumer. As a result of the multiple disclosures, Plaintiff Walker was confused as to the nature of the report being procured about him. That is, because Fred Meyer fails to provide a standalone disclosure as required under the FCRA, Plaintiff was unable to meaningfully evaluate and understand the nature of the report Fred Meyer intended to obtain.

21.    Shortly after Plaintiff completed his application, GIS, on behalf of Fred Meyer, procured a consumer report, which contained Plaintiff's criminal history.

22.    The consumer report contained inaccurate and erroneous information regarding Plaintiff's criminal history.

23.    On or around April 3, 2017, Plaintiff received a pre-adverse action notice and a copy of his consumer report. However, rather than provide contact information for Plaintiff to

discuss items and issues in his consumer report with Fred Meyer, the notice directed Plaintiff to address any issues with GIS, thus denying Plaintiff the ability to explain the errors directly to Fred Meyer.

24.    Then, on or around April 10, 2017, Plaintiff received notice from GIS stating that Fred Meyer was taking adverse action based upon the consumer report that GIS had obtained, which resulted in Plaintiff being fired from his position.

25.    Following Plaintiff's receipt of the notice of adverse action, Plaintiff contacted his Human Resources Manager, who informed him that she was not aware of the consumer report or that Plaintiff was being fired.

26.    Simply put, Fred Meyer fails to give applicants a meaningful opportunity to discuss the report and any inaccuracies with it prior to taking adverse action. Instead, Fred Meyer directs them to a third party, GIS.

27.    As the FTC has made clear, applicants and employees are supposed to have the opportunity to review the background check/consumer report and discuss it with their prospective employer before losing out on a job because of information contained in the report. The FTC has ruled that in general an employer should wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action. This notice advises the applicant or employee of their ability to discuss the report with their employer. (*See, e.g.*, FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

28.    Because of the unlawful disclosures provided to applicants and employees including Plaintiff, as well as Defendant's failure to give applicants an adequate opportunity to remedy

issues with the consumer reports, Defendant has willfully denied Plaintiff the rights guaranteed

to him by the FCRA. Such violations entitle him, and other similarly situated, to statutory dam-

ages of not less than $100 and not more than $1,000.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of himself and two nationwide Classes defined as follows:

> **Disclosure Class**: All persons in the United States (1) who applied for employ-
> ment with Defendant on or after November 8, 2015 (2) about whom Defendant
> procured a consumer report, and (3) who were provided the same disclosures and
> authorizations regarding the possibility that a consumer report may be procured
> about them as the disclosure Fred Meyer provided to Plaintiff.

> **Adverse Action Class**: All persons in the United States who (1) were subject to
> adverse employment action on or after November 8, 2015 based in whole or in
> part on any consumer report procured by Defendant; and (2) who, like Plaintiff,
> received a notice informing them to contact GIS, or another third party, rather than
> Fred Meyer.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, succes-

sors, predecessors, and any entity in which Defendant or its parents have a controlling interest,

and those entities' officers and directors, (2) the Judge or Magistrate Judge to whom this case is

assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and

file a timely request for exclusion, (4) persons who have had their claims in this matter finally

adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns

of any such excluded person.

30.     **Numerosity**: The exact number of the members of the Classes is unknown to

Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has thou-

sands of employees and a potentially even greater number of job applicants. Further, the Class

members can readily be ascertained through Defendant's records.

31.    **Commonality**: Common questions of law and fact exist as to all members of the

Classes for which this proceeding will provide common answers in a single stroke based upon

common evidence, including:

(a)    Whether Defendant's conduct described herein violated the FCRA;

(b)    Whether Defendant has procured or caused to be procured consumer reports to

investigate prospective employees;

(c)    Whether Defendant's disclosure violates the FCRA's requirement that the pre-re-

port disclosure be "stand alone";

(d)    Whether Defendant has acted willfully;

(e)    Whether Defendant's pre-adverse action notice, failed to properly include contact

information for employees and applicants to contact Defendant regarding any issues

with the consumer reports and, if so, whether such policies and procedures violate the

FCRA; and

(f)    The proper measure of statutory damages and the availability and appropriateness

of declaratory and injunctive relief.

32.    **Typicality**: As a result of Defendant's uniform disclosures and conduct, Plaintiff

and the Class members suffered the same injury and similar damages. Thus, Plaintiff's claims are

typical of the claims of the other Class members.

33.    **Adequate Representation**: Plaintiff is a member of the Classes and both he and

his counsel will fairly and adequately represent and protect the interests of the Classes, as neither

has interests adverse to those of the Class members and Defendant has no defenses unique to

Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litiga-

tion and class actions. Further, Plaintiff and his counsel are committed to vigorously prosecuting

this action on behalf of the members of the Classes, and they have the financial resources to do so.

34.     **Injunctive and Declaratory Relief**: In using uniform disclosures that violate the FCRA and by uniformly failing to provide proper pre-adverse action notices as required, Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes so as to render injunctive and declaratory relief appropriate. Stated differently, Defendant's uniform conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, thus making final injunctive and/or declaratory relief appropriate with respect to the Classes as respective wholes. Further, because Defendant's uniform practices result in similar, if not identical, injuries for all Class members, Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes, not on facts or law applicable only to Plaintiff.

35.     **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given Class member's situation, the answer to whether Defendant's pre-report disclosure and failure to provide proper pre-adverse action notices are unlawful is the same for everyone—resounding "yesses" on both questions—and they will be proven using common evidence.

36.     **Superiority and Manageability**: A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to the individual Class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely

prohibit the Class members from obtaining effective relief for Defendant's misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contract, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the Class members.

37.     Plaintiff reserves the right to revise the definition of the Classes as necessary based upon information obtained in discovery.

**COUNT I**
**Violation of 15 U.S.C. § 1681b(b)(2)(A)(i)**
**(On Behalf of Plaintiff and the Disclosure Class)**

38.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39.     The FCRA declares that:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing  to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

40.     The FCRA defines a consumer report as:

. . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

(B) employment purposes . . . .

15 U.S.C. § 1681a(d)(1). Defendant's background checks are consumer reports.

41.     On information and belief, the pre-report disclosures that Defendant provided to Plaintiff and the putative Disclosure Class members as part of the application process willfully violated the FCRA by not being clear and conspicuous, by being unnecessarily duplicative, and by including extraneous information such that the disclosure cannot be said to "stand alone."

42.     Defendant procured consumer reports with respect to Plaintiff and the Disclosure Class members. The disclosures provided to Plaintiff was the same or substantially the same as the one provided to all Disclosure Class members. Thus, Defendant uniformly violated the rights of all Class members in the same way by including multiple disclosures each with extraneous information.

43.     Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

(i)     The rule that FRCA disclosures be "clear and conspicuous" and part of a document consisting "solely" of that disclosure has been the law established for well over a decade.

(ii)    Defendant is a large corporation who regularly engages outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

(iii)   Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a corporation's FCRA responsibilities exists and is readily available explaining that such disclosures must stand-alone. This readily-available guidance means Defendant either was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

44.     Plaintiff and the Disclosure Class are entitled to statutory damages of not less than

$100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. §

1681n(a)(1)(A).

45.     Accordingly, under the FCRA, Plaintiff and the Disclosure Class seek statutory

damages, reasonable cost and attorneys' fees, an injunction against further violations, and a dec-

laration that Defendant's conduct is unlawful.

### COUNT II
### Violation of 15 U.S.C. § 1681b(b)(3)
### (On Behalf of Plaintiff and the Pre-Adverse Action Class)

46.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

47.     The FCRA provides that:

(3) Conditions on use for adverse actions.

(A) In General. Except as provided in subparagraph (b), in using a consumer re-
port for employment purposes, *before* taking any adverse action based in whole or
in part on the report, the person intending to take such adverse action shall pro-
vide to the consumer to whom the report relates—

(i)     a copy of the report; and
(ii)    a description in writing of the rights of the consumer under this subchap-
        ter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

*See* 15 U.S.C. 1681b(b)(3) (Emphasis added).

48.     The FCRA defines adverse action as "a denial of employment or any other deci-

sion for employment purposes that adversely affects any current or prospective employee." 15

U.S.C. § 1681a(k)(1)(B)(ii).

49.     In construing the FCRA, the FTC made clear, applicants and employees are sup-

posed to have the opportunity to review the background check/consumer report and discuss it

with their prospective employer before losing out on a job because of information contained in

the report. The FTC has ruled that in general an employer should wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action. This notice advises the applicant or employee of their ability to discuss the report with their employer. (*See, e.g.*, FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

50.    After obtaining a consumer report about Plaintiff for employment purposes, Defendant—based in whole or in part on information contained in Plaintiff's consumer report—terminated Plaintiff, an adverse employment action.

51.    Defendant violated Section 1681b(b)(3)(A) of the FCRA by failing to provide Plaintiff and members of the Pre-Adverse Action Class with a proper pre-adverse action notice. Instead, Defendant's agent, GIS, sends a pre-adverse action notice, which directs employees and applicants to contact GIS, and not Defendant, should any issues exist on their consumer report. This type of notice frustrates the purpose of the FCRA, and robs applicants and employees of any meaningful chance to discuss any aspect of their consumer reports with Defendant prior to the decision to fire him, as intended by the FCRA.

52.    Defendant's violations of 15 U.S.C. § 1681b(b)(3)(A) were willful. The rule that employers must give applicants and employees an opportunity to remedy any discrepancies with their consumer reports directly with *the employer* is well established. Defendant is a large corporation that has retained lawyers on staff and regularly engages counsel—it has ample means and opportunity to seek legal advice regarding their FCRA responsibilities. Further, there is a glut of judicial and administrative guidance—dating back to the 1990's—regarding a corporation's

FCRA responsibilities. As a consequence of such readily available guidance, Defendant was either aware of its responsibilities or should have been aware of its responsibilities but violated the FCRA anyway.

53.    Plaintiff and the Pre-Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

54.    Accordingly, under the FCRA, Plaintiff and the Pre-Adverse Action Class seek statutory damages, reasonable cost and attorneys' fees, an injunction against further violations, and a declaration that Defendant's conduct is unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel Walker, individually and on behalf of the Classes, respectfully requests that this Court issue an order:

A.    Certifying this case as a class action on behalf of the Classes defined above, appointing Daniel Walker as class representative and appointing his counsel as class counsel;

B.    Declaring that Defendant's actions, as set out above, constitute violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b;

C.    Declaring that Defendant's practice of not providing a copy of the consumer report relied upon and a summary of FCRA rights constitutes a violation of the FCRA;

D.    Awarding damages, including statutory and treble damages where applicable, to Plaintiff and the Classes in amounts to be determined at trial;

E.   Awarding injunctive and other equitable relief as is necessary to protect the inter-

ests of the Classes, *inter alia*: (i) an order prohibiting Defendant from engaging in

the wrongful and unlawful actions described herein; and (ii) requiring Defendant

to provide proper disclosures, notices, and summaries under federal law;

F.   Awarding Plaintiff and the Classes their reasonable litigation expenses and attor-

neys' fees;

G.   Awarding Plaintiff and the Classes pre- and post- judgment interest, to the extent

allowable;

H.   Providing such other injunctive and/or declaratory relief as necessary to protect

the interests of Plaintiff and the Classes; and

I.   Such further and other relief as the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: November 8, 2017                    By:   /s/ Neal Weingart
                                                 ONE OF PLAINTIFF'S ATTORNEYS

                                           Neal Weingart, Esq.
                                           1001 SW Fifth Ave.
                                           Suite 1415
                                           Portland, Oregon 97204
                                           Tel: 503-379-9933
                                           Email: neal@nealweingartlaw.com

                                           Steven L. Woodrow
                                           swoodrow@woodrowpeluso.com*
                                           Patrick H. Peluso
                                           ppeluso@woodrowpeluso.com*
                                           Woodrow & Peluso, LLC
                                           3900 East Mexico Ave., Suite 300
                                           Denver, Colorado 80210
                                           *Counsel for Plaintiff and the Putative Class*

---

*pro hac vice* admission to be filed