**Neal Weingart**
Neal Weingart Attorney at Law, LLC
1001 SW Fifth Ave.
Suite 1415
Portland, OR 97204
503-379-9933
Email: neal@nealweingartlaw.com

Attorneys for Plaintiff and the Alleged Class

(Additional counsel appearing on signature page)

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **DANIEL WALKER**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>**FRED MEYER, INC.**, a Delaware corporation,<br><br>      Defendant. | Case No. 3:17-cv-01791-YY<br><br>**PLAINTIFF WALKER'S RESPONSE IN OPPOSITION TO DEFENDANT FRED MEYER, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..................................... 3

III.    ARGUMENT ................................................................................................... 6

      A.     Fred Meyer plainly violates the FCRA by failing to use a stand-alone disclosure and authorization—Fred Meyer's forms are riddled with extraneous and confusing information that run afoul of the statute ............... 6

           1.    Defendant's form FCRA disclosure unlawfully combines language required for consumer reports with the disclosures required for investigative consumer reports ................................................... 8

           2.    Defendant's authorization form is also unlawful—rather than simply allow Fred Meyer to obtain consumer reports, Fred Meyer's form authorization grants GIS *carte blanche* authority to obtain limitless information from any source by nearly any means ............................. 13

           3.    Defendant also improperly lumps its FCRA disclosure and authorization forms together with other employment forms ............. 14

      B.     Fred Meyer also violates the FCRA by denying applicants and employees the opportunity to discuss any negative information directly with the company ...................................................................................................... 17

      C.     *Spokeo* is inapposite—as the Ninth Circuit has found, workers enjoying standing to bring FCRA claims challenging the sufficiency of their employer's FCRA disclosures where the disclosures contain extraneous information .................................................................................................. 20

      D.     Fred Meyer's attack on Walker's standing to bring his § 1681b(b)(3) claim also falls apart: no instructions were provided for Walker to explain any negative entries to Fred Meyer ....................................................................... 21

IV.    CONCLUSION ............................................................................................. 22

## TABLE OF AUTHORITIES

*Case v. Hertz Corp.*, 2016 WL 1169197 (N.D. Cal. Feb. 26, 2016) .........................................6, 16

*Coleman v. Kohl's Dep't Stores, Inc*., 2015 US Dist LEXIS 135746 (ND Cal Oct. 5, 2015) ......14

*Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425 (E.D. Va. 2015) ...........................10

*Miller v. Quest Diagnostics,* 85 F. Supp. 3d 1058 (W.D. Mo. 2015) ...........................................17

*Nichols v. Lee*, 16 Colo. 147, 26 P. 157 (1891) ...........................................................................23

*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) .................................................................20

*Singleton v. Domino's Pizza, LLC*, 2012 WL 245965 (D. Md. Jan. 25, 2012).........................6, 10

*Speer v. Whole Food Mkt. Grp., Inc.*, 2015 WL 1456981 (M.D. Fla. Mar. 30, 2015) .................16

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), .............................................1

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir.) ............................................................................ *passim*

## STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ..........................................................7, 9, 12

FTC June 27, 1997 Advisory Opinion to Weisberg (6-27-97) .....................................................18

FTC February 11, 1998 Advisory Opinion to Coffey (02-11-98) .............................................2, 18

FTC June 11, 1998 Advisory Opinion to Lewis (06-11-98).........................................................19

FTC March 25, 1999 Advisory Opinion to Willner (03-25-99) .........................................9, 10, 11

## I.    INTRODUCTION

This case challenges Fred Meyer Inc.'s ("Fred Meyer" or "Defendant") violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")--specifically the FCRA's background check rules. That is, Fred Meyer's Disclosure Regarding Consumer Reports and Investigative Consumer Reports ("Disclosure") and its Authorization Regarding Consumer Reports and Investigative Consumer Reports ("Authorization") are unlawfully riddled with extraneous information that render the disclosure confusing and incapable of standing alone. (*See* Disclosure and Authorization, true and accurate copies of which are attached hereto as Group Ex. A.) Fred Meyer also denies applicants and employees any opportunity to discuss any negative items with the company prior to taking adverse action—Fred Meyer instead directs all "disputes" to its third-party vendor, General Information Services, Inc. ("GIS").

Plaintiff Daniel Walker ("Walker" or "Plaintiff") is simply one employee out of thousands who received Fred Meyer's confusing Disclosure and Authorization forms and was let go when GIS report about him showed negative items. And like everyone else, Walker was instructed to dispute any negative items with GIS—he was never permitted to discuss his background or explain any prior negative items directly with Fred Meyer.

Ignoring this reality, and seeking a quick exit before any discovery is exchanged, Fred Meyer asks for dismissal on the pleadings under both Rule 12(b)(6) and Rule 12(b)(1). Defendant asserts that it provided Walker with a stand-alone disclosure and that Walker supposedly lacks standing to sue, both in light of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) ("Spokeo II") and because Walker didn't dispute any negative items on his report with GIS within the 5 business days that were supposedly provided for him to do so.

1

Fortunately for Walker and for the thousands of other applicants and employees who were provided improper disclosures and denied proper notice, Defendant's Motion to Dismiss gets it wrong on both the facts and the law. Fred Meyer's supposed "stand-alone" disclosure improperly mixes the disclosures for consumer reports and investigative consumer reports (leaving it unclear when Fred Meyer may perform personal interviews), and includes other additional information about inspecting GIS's records, bringing a friend, access to GIS employees to learn about GIS's coding process, and a signed acknowledgment of receipt. Likewise, Fred Meyer's Authorization is expansive and includes extraneous information that allows GIS to collect information about any topic from any source, public or private. Taken together or separately, Fred Meyer's disclosure cannot be said to stand-alone. Rather, it is combined with other, overwhelming information that renders it confusing.

Fred Meyer also botches the pre-adverse action process. Ignoring 20 years of FTC guidance, Fred Meyer's pre-adverse action notices direct all "disputes" to GIS. This undercuts the purpose of the pre-adverse action notice, which the FTC has repeatedly explained is to enable employees "to discuss the report with employers before adverse action is taken."[1]

Likewise, neither *Spokeo* nor any other standing principals suggest that Plaintiff Walker hasn't alleged violation of his concrete and particularized privacy interests as codified in the FCRA. Indeed, Fred Meyer overlooks the fact that the *Spokeo* panel reaffirmed its finding that Robins had standing to sue under the FCRA and that the Ninth Circuit separately found standing for FRCA background check violations in its decision in *Syed v. M-I, LLC*, 853 F.3d 492, 500–01 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017).

---

[1] *See, e.g.*, FTC's February 11, 1998 "Advisory Opinion to Coffey (02-11-98)" ("Coffey Advisory Opinion"), *available at e.g.* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98.

As such, and as set forth further below, Walker has stated plausible claims for relief and has standing to sue under Spokeo and Article III. Defendant's bid for dismissal fails as a result.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

***Fred Meyer, one of the nation's largest grocers, conducts background checks on employees and applicants.***

Fred Meyer is part of the Kroger family and is one of the largest grocers in the United States. It was founded in 1922 "and now has more than 130 store locations in Oregon, Washington, Idaho, and Alaska." (Compl. ¶ 12.) Fred Meyer has thousands of employees and "potentially [an] even greater number of applicants." (Compl. ¶ 30.)

As part of Defendant's hiring process, applicants and employees are required to review and execute several form disclosure documents relating to Fred Meyer's ability to obtain and share background check information regarding them. (Compl. ¶¶ 17-19.) As explained below, these disclosures were "confusing to Plaintiff and the average consumer." (Compl. ¶ 20.)

***Plaintiff Walker begins working for Fred Meyer and is provided with Fred Meyer's standard form Disclosure and Authorization forms***

In March 2017 Plaintiff Daniel Walker applied for a job as an associate at one of Fred Meyer's stores in Portland, Oregon using Defendant's online application. (Compl. ¶ 13.)

During the application process, Walker was required to execute several documents, including multiple papers mentioning background checks. Two documents are particularly relevant here: Fred Meyer's Disclosure Regarding Consumer Reports and Investigative Consumer Reports (the "Disclosure") and its Authorization Regarding Consumer Reports and Investigative Consumer Reports (the "Authorization"). (Compl. ¶¶ 17-19.) Each contains information well beyond a disclosure that Fred Meyer will obtain a consumer report for

employment purposes and an authorization that Fred Meyer may do so. (*See* Group Exhibit A,

attached hereto.) The Disclosure states, in pertinent part, that:

> To prepare the reports, GIS may investigate your education, work history, professional licenses and credenitals, referencs, address history, social security number validiity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.

> You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including comunication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.

> If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the socpe and nature of the investigation performed.

(Group Ex. A.) The Authorization, in turn, states:

> Authorization: By signing below, you authorize: (a) General Information Services, Inc. ("GIS") to request information about you from any public or private information source; (b) anyone to provide information about you to GIS; (c) GIS to provide us (the Kroger family of companies) one or more reports based on that information; and (d) us to share those reports with others for legitimate business purposes related to your employment. GIS May investigate your education, work history, professional license and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record, credit history, and any other information with public or private information sources. You acknowledge receiving the Federal Trade Commission's "Summary of Your Rights Under the Fair Credit Reporting Act." You acknowledge that a fax image, or copy of this authorization is as valid as the original. You make this authorization to be valid for as long as you are an application or employee with us.

(Group Ex. A.) The Disclosure and Authorization provided to Plaintiff were "the same or

substantially the same as the one provided to all Disclosure Class members." (Compl. ¶ 42.)

Walker was hired shortly after he applied. (Compl. ¶ 14.)

***Walker is let go based on information contained in his background check, and he is directed to fax any disputes to GIS.***

On April 3, 2017, Walker was sent a letter by GIS indicating that Fred Meyer had

obtained a background check regarding Plaintiff and "may take action based on the enclosed

report." (*See* Exhibit B, attached hereto.) The April 3, 2017 letter advised Walker that: "You have the right to dispute the accuracy or completeness of any information contained in the report by contacting GiS [*sic*] directly." (Ex. B.) That is, "...rather than provide contact information for Plaintiff to discuss items and issues in his consumer report with Fred Meyer, the notice directed Plaintiff to address any issues with GIS, thus denying Plaintiff the ability to explain the errors directly to Fred Meyer." (Compl. ¶ 23.) The letter stated that GIS was including "a Disclosure Request form that can be completed by you to dispute the findings. Please fax the completed form to GiS [*sic*] to the number on the form within (5) five business days from the date of this letter." (Ex. B.) The fifth business day would have been April 10, 2017.

Without providing the full benefit of the fifth business day, on April 10, 2017 Walker received an adverse action letter notifying him that "Based on information contained in a recently obtained consumer report on you, Fred Meyer has elected not to extend you an offer of employment or continue your employment." (*See* Exhibit C, attached hereto.) The letter further stated that, "GIS did not make the decision not to hire you or to discontinue your employment, and is unable to provide you with specific reasons why you were not hired or your employment was discontinued." (*See* Ex. C.) Most confusingly, the letter also stated that, "You have been provided with an opportunity to dispute the accuracy or completeness of any information contained in the report by contacting the courts in which the information was obtained." (*See* Ex. C.) This was the first mention of any such opportunity. Again, the April 3, 2017 notice had indicated Walker could dispute inaccurate information by faxing GIS directly—not by contacting any court. (*See* Ex. B.)

5

Following receipt of the adverse action letter, Walker contacted his Human Resources Manager, "who informed him that she was not aware of the consumer report or that Plaintiff was being fired." (Compl. ¶ 25.)[2]

Because Fred Meyer's disclosure and authorization contain superfluous information, coupled with the fact that Fred Meyer denied applicants and employees the opportunity discuss their reports with Fred Meyer, as opposed to simply faxing disputes to GIS, Walker filed the instant case on behalf of himself and all others similarly situated on November 8, 2017. (Dkt. 1.) Defendant has moved to dismiss, which should be denied as set forth below.

## III.    ARGUMENT

The Court should deny Fred Meyer's Motion to Dismiss. Defendant violates the FCRA by failing to use a stand-alone disclosure and authorization, *Spokeo* doesn't strip Walker of his standing to sue for the disclosure violations, and Walker enjoys standing to challenge Fred Meyer's failure to give him any opportunity to discuss the report directly with the company. Fred Meyer is incorrect on both the law and the facts, and none of its arguments warrant dismissal. As such, and as explained further below, the Court should deny Defendants' Motion and allow the case to proceed with discovery.

### A.    Fred Meyer plainly violates the FCRA by failing to use a stand-alone disclosure and authorization—Fred Meyer's forms are riddled with extraneous and confusing information that run afoul of the statute.

Fred Meyer's Motion to Dismiss first fails because its FCRA Disclosure and Authorization forms plainly violate the FCRA. The FCRA states that:

---

[2] Although it isn't alleged, on April 27, 2017 Plaintiff faxed substantial documentation to GIS and Fred Meyer explaining his conviction and the manner by which he had gone above and beyond to repay his debt to society.

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely of the disclosure*, that a consumer report may be obtained for employment purposes, and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

As the Ninth Circuit explained in holding that the inclusion of a liability waiver in a defendant's FCRA authorization violated standalone requirement, "The ordinary meaning of "solely" is "[a]lone; singly" or "[e]ntirely; exclusively." *Syed v. M-I, LLC*, 853 F.3d 492, 500–01 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017) (*citing American Heritage Dictionary of the English Language* 1666 (5th ed. 2011)). The only exception is that "the consumer may authorize the procurement of a consumer report on the document containing the disclosure." *Syed*, 853 F.3d at 500 (*citing* 15 U.S.C. § 1681b(b)(2)(A)). That is because:

Allowing an authorization on the same document as the disclosure is consistent with the purpose of the statute. Congress passed Section 1681b(b)(2)(A) in order to protect consumers from "improper invasion[s] of privacy," S. Rep. No. 104-185 at 35 (1995), and the disclosure and authorization requirements fit hand in glove to achieve that purpose. Indeed, each would be largely ineffective on its own. Had the statute required disclosure without conditioning the procurement of a consumer report on the job applicant's authorization, it would have failed to give the applicant control over the procurement of the personal information contained in the consumer report. On the other hand, had the statute conditioned the procurement of a report on the job applicant's authorization without mandating clear disclosure by the prospective employer, *Congress's purpose would have been frustrated because applicants would not understand what they were authorizing*. The disclosure and authorization clauses therefore work in tandem to further the congressional purpose of protecting consumers from "improper invasion[s] of privacy."

7

> Congress reasonably could have concluded that permitting the consumer to provide an authorization on the same page as the disclosure would enhance the effectiveness of each clause. A job applicant may read a disclosure more closely if he understands that the potential employer may obtain his consumer report only if he signs an authorization for it to do so. The decision to authorize or deny the prospective employer's use of his report to accept or reject his employment application may be better informed if the authorization immediately follows the disclosure.

*Syed*, 853 F.3d at 499-501. ("Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute.")

As explained below, Fred Meyer's disclosure & authorization forms violate 15 U.S.C. § 1681b(b)(2)(A)'s stand-alone disclosure requirements. The Disclosure contains disclosures for "investigative consumer reports" that overwhelm the disclosures required for "consumer reports," the Disclosure and Authorization each contains superfluous information, the documents are presented together with other employment materials.

      1.    **Defendant's form FCRA disclosure unlawfully combines language required for consumer reports with the disclosures required for investigative consumer reports.**

Fred Meyer's disclosure most obviously violates the FCRA because it includes extensive information about the nature and scope of investigative consumer reports that may be procured so that the supposed "stand alone" disclosure required for consumer reports is totally overshadowed. This has been improper for almost 19 years. "Consumer report", as distinguished from "investigative consumer report" is defined as:

> . . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

(B) employment purposes . . . .

15 U.S.C. § 1681a(d)(1). An "investigative consumer report," on the other hand, is something

different altogether. It is defined under the Act as:

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living *is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information*.

*See* 15 U.S.C. § 1681a(e) (emphasis added). The key difference is thus the performance of

interviews.

Not surprisingly, "consumer reports" and "investigative consumer reports" are subject to

distinct disclosure requirements. That is, 15 U.S.C. § 1681d(a) and 15 U.S.C. § 1681d(b) set

forth the disclsoure requirements for investigative consumer reports, inclduing disclosures

regarding the nature and scope of such investigative consumer reports. This contrasts with the

requirements for non-investigative consumer reports, which again require that:

> a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, **in a document that consists solely of the disclosure**, that a consumer report may be obtained for employment purposes."

*See* 15 U.S.C. § 1681b(b)(2)(i) (emphasis added.)

The FTC has provided clarification and guidance on the interplay of these separate

disclosures.[3] Specifically, the FTC's March 25, 1999 "Advisory Opinion to Willner (03-25-99)"

("Willner Advisory Opinion") explained that:

---

[3] Courts routinely look to FTC Opinions when interpreting the FCRA. *See, e.g.*, *Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197, at *3, 4 (N.D. Cal. Feb. 26, 2016) (relying on FTC Advisory Opinions to Coffee, Leathers, Hauxwell, and Steer); *Singleton v. Domino's Pizza,*

[W]e [previously] opined that the employer could also include the authorization required by Section [1681b(b)(2)(A)(ii)] because the authorization would contain limited verbiage and would enhance the Section [1681b(b)(2)(A)(i)] disclosure, rather than detract from it. We believe that a limited Section [1681d(a)] disclosure would also be permissible, on the same theory. For example:

> A consumer report may be obtained on you for employment purposes. It may be an "investigative consumer report" that includes information as to your character, general reputation, personal characteristics and mode of living. You have a right to request disclosure of the nature and scope of the report, which involves personal interviews with sources such as your neighbors, friends, or associates.

The first sentence (the general consumer report disclosure for employers) sets forth the disclosure without elaboration, and the second and third sentences (the initial investigative consumer report disclosure) are sufficiently brief and in accord with the first sentence that we would consider it as emphasizing the Section [1681b(b)(2)(A)(i)] disclosure, and thus be permissible under that section on the theory set forth in the Steer letter. **However, a Section [1681d(b)] notice setting forth the nature and scope of the investigation would of necessity be much more detailed and would likely be held to overshadow [the 1681b(b)] disclosure in violation of [1681b(b)(2)(A)(i)]. Therefore, we believe that an employer may combine only a very limited Section [1681d] notice with the general Section [1681b(b)(2)(A)(i)] notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document. The surest way for an employer to comply, of course, would be to provide the Section [1681b(b)(2)(A)(i)] notice and the Section [1681d] notice in separate documents.**

See Willner Advisory Opinion, *available at* https://www.ftc.gov/policy/advisory-

opinions/advisory-opinion-willner-03-25-99 (last visited June 1, 2016) (Emphasis added).

Hence, the disclosure for investigative consumer reports can be combined with the disclosure for

non-investigative consumer reports so long as the investigative consumer report disclosure is

---

LLC, No. CIV.A. DKC 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (relying on FTC Opinions and stating that "while the *Safeco* Court concluded that FTC advisory opinions did not constitute *"authoritative"* guidance on the FCRA . . . numerous courts interpreting the FCRA after *Safeco* have found such opinion letters *persuasive."* (emphasis in original) (citations omitted); *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 431 (E.D. Va. 2015) (relying on FTC Advisory Opinions and approving of *Singleton's* reasoning, stating "[t]he approach taken in *Singleton* is a sound and reasonable one because it abides by the rule of *Safeco* while considering the views of the FTC staff to be informative, but not to be entitled to the deference that is owed to a formal Commission Opinion.").

limited and doesn't contain details of the nature and scope of investigation in a way that overshadows the standalone consumer report disclosure.

Ignoring such guidance entirely, Defendant's form Disclosure contains information regarding the nature and scope of investigation to be performed such that the disclosure mandated by 15 U.S.C. § 1681b(b)(2)(i) is confusing and cannot be said to "stand alone" as required. Fred Meyer's Disclosure states, in relevant part:

> To prepare the reports, GIS may investigate your education, work history, professional licenses and credenitals, references, address history, social security number validiity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.
>
> You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including comunication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.
>
> If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the socpe and nature of the investigation performed.

(*See* Ex. A) (Emphasis in original). This disclosure contains <u>far</u> more information about an investigative consumer report than the FTC indicated may be included. (*See* Willner Advisory Opinion.) Indeed, it includes extensive information about the nature and scope of the investigation, indicating that GIS may delve into subject areas like education, work history, credentials, references, and a host of other background details—literally stating that it covers "any other information with public or private information sources."

Further, the Disclosure fails to make clear whether any information that "GIS obtains...by interview" applies to investigative consumer reports or to ordinary consumer reports. Because the disclsoures are combined, they give the impression that GIS to allowed conduct interviews when compiling consumer reports when in reality such interview are the hallmark of investigative consumer reports (and are not permitted for "mere" consumer reports). A reader of

the Disclosure has no way of knowing whether GIS will perform interviews simply as part of the background check.

The document is also littered with additional disclosures. These include  the right of employees and applicants to inspect GIS's files, to communicate with trained personnel about GIS's coding, and to bring an additional person to assist the employee when it reviews GIS's files. All of this is extra and superfluous information that a reasonable trier of fact could find strips the disclosure of any "stand-alone" label. Additionally, while the disclosure may contain the accompanying authorization without causing the disclosure to no longer standalone, 15 U.S.C. § 1681b(b)(2)(A) (...which authorization may be made on the document referred to in clause (i)...."), Fred Meyer's form doesn't include any authorization. Rather, the bottom of the form features an extraneous "acknowledgement of receipt" of the disclosure itself. There is simply no authority that permits Fred Meyer to include information about GIS's files or coding or to use the disclosure as a receipt and acknowledgement.

In sum, instead of providing a separate disclosure for investigative consumer reports as cautioned by the FTC, Fred Meyer gambled and combined the disclosures for investigative consumer reports with the disclosure for ordinary consumer reports. It was a bad bet. The disclosures are plausibly confusing, as the details of any investigative consumer report overshadow what is supposed to be a standalone disclosure. And when coupled with additional superfluous information about the ability to inspect GIS's files and bring a friend, plus the acknowledgement of receipt, there is simply no basis for concluding on the pleadings that, taking all facts in Walker's favor, the disclosure "stands alone" as required. As such, the Court should deny Fred Meyer's Motion to Dismiss.

      **2.**      **Defendant's authorization form is also unlawful—rather than simply allow Fred Meyer to obtain consumer reports, Fred Meyer's form**

**authorization grants GIS *carte blanche* authority to obtain limitless information from any source by nearly any means.**

Fred Meyer's authorization is also riddled with extraneous information and is thus unlawful. *See, e.g*., *Syed*, 853 F.3d at 502 ("Congress told us exactly what it meant when it described the authorization as encompassing only 'the procurement of [a consumer] report.'") (quoting 15 U.S.C. § 1681b(b)(2)(A)(ii)). Defendant's authorization well exceeds such bounds. For convenience, the Authorization states:

> Authorization: By signing below, you authorize: (a) General Information Services, Inc. ("GIS") to request information about you from any public or private information source; (b) anyone to provide information about you to GIS; (c) GIS to provide us (the Kroger family of companies) one or more reports based on that information; and (d) us to share those reports with others for legitimate business purposes related to your employment. GIS May investigate your education, work history, professional license and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record, credit history, and any other information with public or private information sources. You acknowledge receiving the Federal Trade Commission's "Summary of Your Rights Under the Fair Credit Reporting Act." You acknowledge that a fax image, or copy of this authorization is as valid as the original. You make this authorization to be valid for as long as you are an application or employee with us.

(*See* Group Ex. A.) This language is expansive and purports to grant GIS with unlimited authority to request information about the applicant/employee and to authorize "anyone to provide information about" the applicant/employee to GIS. The language is so broad that even medical professionals would be included. Also, it is unclear how GIS obtains information, and nothing in the statute suggests that it is proper for employers to secure what amounts to a retroactive blessing of a consumer reporting agency's data collection methods by applicants and employees through the FCRA authorization. Likewise, there is no basis in the statute for including a statement granting permission for the employer to share "those reports with others for legitimate business purposes related to your employment," in the authorization. The inclusion

of such language compounds the confusing nature of the Authorization to the extent that individuals are unclear as to what they are agreeing to.

As explained above, the purpose of the authorization is the protection of privacy rights— the authorization must apprise applicants and employees such that they "understand what they [a]re authorizing." *Syed*, 853 F.3d at 499-501. Fred Meyer's authorization here extends well beyond "only the procurement of a consumer report" such that applicants and employees are likely to be substantially confused regarding what they have authorized. (Compl. ¶ 20.) Indeed, rather than encompass "only the procurement of a consumer report," Fred Meyer's authorization, like its disclosure regarding consumer reports and investigative consumer reports, is improperly riddled with extraneous information.

The Court should deny Fred Meyer's Motion to Dismiss on these grounds as well.

### 3. Defendant also improperly lumps its FCRA disclosure and authorization forms together with other employment forms.

Taking a myopic view of the pleadings, Fred Meyer asserts that:

Mr. Walker alleges that Fred Meyer violated the FCRA's "stand alone" disclosure requirement by providing him with the Offer Acknowledgement on March 21, 2017. (Comp. 41.) According to Mr. Walker's liability theory, the fact that the Offer Acknowledgement referenced a background check somehow requires the conclusion that Fred Meyer failed to provide him with the "stand alone" disclosure required by the FCRA.

(Def. Mot. 10-11.) Having erected this straw man, Defendant asserts that this case is similar to *Coleman v. Kohl's Dep't Stores, Inc*., 2015 US Dist LEXIS 135746 (ND Cal Oct. 5, 2015) where the court found that the mere presentation of separate documents at the same time during the employment application does not mean the separate papers should be considered as a single document such that any separate disclosure fails to "stand alone." This attack fails for several reasons.

First, Fred Meyer simply mischaracterizes the allegations of the Complaint. Walker doesn't allege, in paragraph 41 (as cited by Defendant) or anywhere else, that Fred Meyer's disclosure fails to stand alone as required because it was presented along with the Offer Acknowledgement, which also contains superfluous information. That is not Walker's theory of the case. Rather, Walker alleges that:

> [T]he pre-report disclosures that Defendant provided to Plaintiff and the putative Disclosure Class members as part of the application process willfully violated the FCRA by not being clear and conspicuous, by being unnecessarily duplicative, and by including extraneous information such that the disclosure cannot be said to "stand alone."

(Compl. ¶ 41.) Hence, rather than allege merely that the forms were provided with the Offer Acknowledgement which failed to stand alone, Walker alleges that the disclosure document and the authorization document themselves, when considered separately and without reference to the Offer Acknowledgement at all, are still unlawfully riddled with extraneous information.

And indeed they are. Again, the disclosure includes:

- disclosures for investigative consumer reports that leave the reader uncertain as to whether interviews will be conducted as part ordinary consumer report data gathering;

- disclosures regarding the ability of applicants to inspect GIS files, to learn GIS's coding, and to bring a friend; and

- an acknowledgement of receipt.

Additionally, and while it is contained in a separate document, the authorization itself purports to expand the nature of the type of report that may be obtained by permitting "anyone" to provide information to GIS. That is, far from "encompassing only 'the procurement of [a consumer] report,'" the authorization form

As such, Walker doesn't simply allege that the Disclosure and Authorization were provided with the Offer Acknowledgement and that, therefore, everything should be read as a

single document. Rather, Plaintiff alleges—and the forms themselves make clear—that each

document contains an abundance of extraneous disclosures that, when viewed in a light most

favorable to Walker:

> were confusing to Plaintiff and the average consumer. As a result of the multiple
> disclosures, Plaintiff Walker was confused as to the nature of the report being
> procured about him. That is, because Fred Meyer fails to provide a standalone
> disclosure as required under the FCRA, Plaintiff was unable to meaningfully
> evaluate and understand the nature of the report Fred Meyer intended to obtain.

(Compl. ¶ 20.)

Second, even if the Court were to accept Fred Meyer's redraft of Walker's legal theory (it

shouldn't), Walker has still stated a plausible claim. As the court in *Speer v. Whole Food Mkt.*

*Grp., Inc.*, explained when faced with such a theory, "Based on the allegations, with all

inferences drawn in favor of Plaintiff, if both the disclosure and the consent forms are combined

and read as one document with the waiver and release included simultaneously with the

disclosure, the complaint states a claim for relief." No. 8:14-CV-3035-T-26TBM, 2015 WL

1456981, at *1, *3 (M.D. Fla. Mar. 30, 2015). And while it is true that *Speer* involved the

question of whether the inclusion of a liability waiver defeated the disclosure's "stand alone"

nature, the inclusion of a liability waiver is not the only way that employers run afoul of the

FCRA's stand-alone disclosure requirement. *See, e.g.*, *Case v. Hertz Corp.*, No. 15-CV-02707-

BLF, 2016 WL 1169197, at *5 (N.D. Cal. Feb. 26, 2016) ("The Court finds that Case's

allegations are sufficient to state a claim. The form includes, among other things, information

regarding time frames within which the applicant must challenge the accuracy of his or her

consumer report, disclosures regarding the circumstances under which the applicant may receive

a copy of the report, an acknowledgement that 'all employment decisions are based on legitimate

non-discriminatory reasons,' and a state-specific disclosure unrelated to Case's potential

employment in California, together constitute extraneous information in violation of the FCRA stand-alone requirement"); *see also Miller v. Quest Diagnostics,* 85 F. Supp. 3d 1058, 1060 (W.D. Mo. 2015) (holding that the applicable disclosure form did not "stand alone" because it included state-specific information and a statement that the consumer "fully understand[s] that all employment decisions are based on legitimate non-discriminatory reasons").

As such, Defendant mischaracterizes the allegations—Walker doesn't merely allege that the Offer Acknowledgement improperly contained extraneous information. Rather, Walker has shown that both the Disclosure and Authorization here, when considered separately, contain extraneous, superfluous information that renders it nearly impossible to conclude the disclosure informing Walker that Fred Meyer could procure a consumer report "stands alone." The Court should deny Fred Meyer's Motion to Dismiss as a result.

**B.**    **Fred Meyer also violates the FCRA by denying applicants and employees the opportunity to discuss any negative information directly with the company.**

Fred Meyer's pre-adverse action notice process also violates the FCRA by failing to provide applicants and employees with an opportunity to explain any negative items to the company. That is, instead of directing employees and applicants to speak with Fred Meyer about any negative items uncovered in their consumer reports obtained from GIS, Fred Meyer's pre-adverse action notices instead direct "disputes" to GIS, stating:

> We are also enclosing a ...Disclosure Request form that can be completed by you to dispute the findings. Please fax the completed form to GiS to the number on the form within (5) five business days from the date of this letter.
>
> ...
>
> You have the right to dispute the accuracy or completeness of any information contained in the report by contacting GiS directly. [sic]

(*See* Ex. B.) Indeed, "Fred Meyer fails to give applicants a meaningful opportunity to discuss the report and any inaccuracies with it prior to taking adverse action. Instead, Fred Meyer directs them to a third party, GIS." (Compl. ¶ 26.)

Discounting such allegations, Fred Meyer asserts that Walker is seeking to "read additional requirements into 15 USC § 1681b(b)(3)." (Def. Mot. 13.) Indeed, to hear Defendant tell it, "Mr. Walker's legal theory fails because there is no legal requirement that Fred Meyer provide Mr. Walker with the type of notice to which he now claims he was entitled." (Def. Mot. 13.) ("[N]o such limited 'discussion' requirement exists in the FCRA or even in *Weisberg*").

Fred Meyer is simply incorrect. In staking out its position, Defendant ignores repeated guidance from the FTC, which first explained in its June 27, 1997 "Advisory Opinion to Weisberg (06-27-97)" that employees must be afforded a reasonable period of time to discuss the contents of the report, which in that case was at least five business days.[4] Then, in the FTC's February 11, 1998 "Advisory Opinion to Coffey (02-11-98)" ("Coffey Advisory Opinion"), the FTC explained further that:

> Second, you ask if there is any specific amount of time that must elapse from the time the required items are provided to the consumer and the employer's adverse employment action. The law is silent as to how long the employer must wait after making the Section 604(b)(3) pre-adverse action disclosure before actually taking adverse action; it states only that the specified items be provided before the adverse action is taken. ***Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the clear purpose of the provision to allow consumers to discuss the report with employers before adverse action is taken.***

*See* Coffey Advisory Opinion, *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98 (Emphasis added.) Accordingly, Advisory Opinion

---

[4] *See* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97 ("You suggest a period of five business days from the date of the notice. Although the facts of any particular employment situation may require a different time, the five day period that you proposed appears reasonable.")

to Coffey made clear that the entire purpose of providing the pre-adverse action notice is so that employers could "allow consumers to discuss the report with [the] employer[] before adverse action is taken." And lest there be any confusion, just four months later the FTC reiterated in its June 11, 1998 "Advisory Opinion to Lewis (06-11-98)" ("Lewis Advisory Opinion") that:

> Section 604(b)(3) requires the employer to provide a copy of the report and a copy of the summary of consumer rights (as prescribed by the Federal Trade Commission) to the affected consumer "before taking adverse action" based on the report. The statute does not specify how long an employer must wait, after providing the required disclosures, before taking the adverse action. The amount of time that an employer should wait before taking adverse action will vary depending upon the circumstances, such as the nature of the job involved and the way that the employer does business. ***Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the purpose of the provisions to allow consumers to discuss the report with employers before adverse action is taken.***

*See* Lewis Advisory Opinion, *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-lewis-06-11-98. (Emphasis added.) The purpose of the pre-adverse action notice is thus to ensure that employees are able to discuss the reports with their employers—they are not supposed to be passed off to the background check provider.

Fred Meyer presents no basis whatsoever for abandoning the FTC's Advisory opinions, which have set the standard for pre-adverse action notices for two decades. Fred Meyer decided to direct applicants and employees who had "disputes" to GIS—no invitation was extended or notice provided apprising applicants and employees of their right to discuss and explain items— including negative items that are accurate but for which there may exist mitigating circumstances, such as an individual who has fully repaid his/her debt to society and then some—directly with Fred Meyer. Indeed, Plaintiff alleges that his HR Manager at Fred Meyer wasn't even apprised of the decision to revoke his employment. By restricting the scope of the exchange to disputes (as opposed to discussions of the report) and by pushing the process onto

GIS, Fred Meyer strips its applicants and employees of this ability, and thus conducts itself entirely at odds with the purpose of the pre-adverse action notice requirement as explained by the FTC—which is to allow consumers to discuss the report with employers before adverse action is taken. Indeed, by passing everything off to GIS (who in turn indicates that it has no role in any adverse decision) Fred Meyer's pre-adverse action process is essentially illusory.

Put simply, Defendant's assertion that Plaintiff somehow seeks to read new or additional requirements into the FCRA is without merit. It is Fred Meyer that ignores decades of established FTC guidance to the detriment of Walker and hundreds (or perhaps even thousands) of employees and applicants just like him.

C.    *Spokeo* **is inapposite—as the Ninth Circuit has found, workers enjoy standing to bring FCRA claims challenging the sufficiency of their employer's FCRA disclosures where the disclosures contain extraneous information.**

Fred Meyer also attacks the Complaint via Federal Rule 12(b)(1) by asserting that Walker lacks standing to sue under *Spokeo, Inc. v. Robins*, (Def. Mot. 14.) Defendant never applies the *Spokeo* decision to the facts of this case or explains why *Spokeo* deprives the Court of subject matter jurisdiction here. Moreover, Defendant ignores the fact that the Ninth Circuit reaffirmed on remand its prior finding that Robins enjoyed standing to sue under the FCRA. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017) ("We are satisfied that Robins has alleged injuries that are sufficiently concrete for the purposes of Article III.") ("Spokeo III".)

And even more on point, the Ninth Circuit separately found Article III standing for employees and applicants to sue for violations of the FCRA "stand alone" disclosure requirement in *Syed*:

> The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right
> to information by requiring prospective employers to inform job applicants that
> they intend to procure their consumer reports as part of the employment application

process. The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." *See Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)).

Syed alleged in his complaint that he "discovered Defendant M-I's violation(s) within the last two years when he obtained and reviewed his personnel file from Defendant M-I and discovered that Defendant M-I had procured and/or caused to be procured a 'consumer report' regarding him for employment purposes based on the illegal disclosure and authorization form." This allegation is sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(I)–(ii) because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it. Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute. Therefore, Syed did allege a concrete injury and has Article III standing to bring this lawsuit. *See Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 628–638 (E.D. Va. 2016) (holding that an improper disclosure under 15 U.S.C. § 1681b(b)(2)(A) causes "a concrete injury sufficient to confer standing").

*Syed*, 853 F.3d at 499–500. The same reasoning applies with equal weight here. Drawing all reasonable inferences in a light most favorable to Walker, he was deprived of information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(I)–(ii). Walker expressly alleges that he was confused as to what he was authorizing (Compl. ¶ 20)—a somewhat predictable claim given the fact the Disclosure and Authorization documents were both filled with irrelevant and superfluous information. As such, Walker plainly has standing, under both Spokeo III and *Syed*, notwithstanding Fred Meyer's failure to discuss either case.

**D.    Fred Meyer's attack on Walker's standing to bring his § 1681b(b)(3) claim also falls apart: no instructions were provided for Walker to explain any negative entries to Fred Meyer.**

For it s final argument, Fred Meyer claims that Walker lacks standing to bring his pre-adverse action claims under § 1681b(b)(3). (Def. Mot. 16-17.) Essentially, Fred Meyer asserts that Walker hasn't suffered any injury in fact because he admittedly received a pre-adverse action notice (which Walker doesn't contend was confusing) and, according to Fred Meyer, this notice gave Walker "with the means to dispute the information contained in his consumer report" and a reasonable amount of time to do so. (*Id.*) Such assertions fall apart.

First, the question is not whether Walker was afforded a reasonable period to dispute any inaccurate items with GIS—the FCRA violation at issue claims that Defendant failed to provide Walker with any opportunity to discuss the report, including any accurate negative items, directly with Fred Meyer. Again, the Pre-Adverse Action Notice stated that "You have the right to dispute the accuracy or completeness of any information contained in the report by contacting GIS directly."[5] No mention is made regarding the ability to contact Fred Meyer directly. And in its April 10, 2017 letter, GIS advises Walker that, "Fred Meyer has elected not to extend you an offer of employment or continue your employment." GIS further states that "GIS did not make the decision not to hire you or to discontinue our employment, and is unable to provide you with specific reasons why you were not hired or your employment was discontinued." Hence, GIS claims that it is Fred Meyer's decision, yet all communications regarding the report are to be made solely in the case of disputes to GIS.

That Walker didn't fax a dispute to GIS within 5 business days is thus beside the point. The law didn't require him to dispute anything with GIS. *Nichols v. Lee*, 16 Colo. 147, 153, 26

---

[5] Confusingly, the April 10, 2017 letter purported to advise Walker that "You have been provided with an opportunity to dispute the accuracy or completeness of any information contained in the report by contacting the courts in which the information was obtained." (*See* Ex. C.) Walker was *never* directed to dispute the accuracy or completeness of information with the courts that GIS had relied on—that statement is simply false. It also undercuts Fred Meyer's assertion that its process wasn't confusing.

22

P. 157, 159 (1891) ("The law does not require unreasonable, unnecessary, nor superfluous acts to be performed"). Rather, he was to be afforded an opportunity to discuss items with Fred Meyer directly, which he never received. And Plaintiff ultimately did send to Fred Meyer substantial information demonstrating that he had repaid his debt to society such that he could readily perform the duties required of him with the excellence expected of any Fred Meyer employee. It took more than 5 business days to compile the information, and given GIS's total lack of involvement in the decision-making process, it made little sense to send such materials to GIS.

Indeed, it is worth pointing out that Fred Meyer didn't even wait 5 business days. That is, the fifth business day was April 10, 2017—the very day that GIS sent its adverse action letter notifying Walker that he had been terminated. Had GIS afforded 5 full business days, it would have sent its letter no sooner than April 11, 2017. As such, GIS shouldn't be allowed to avoid liability due to some phantom five-day dispute process that it didn't itself honor.

And when coupled with the fact that Walker's own HR manager didn't know of the decision, a trier of fact could conclude that Fred Meyer's background check process is perfunctory and that Fred Meyer doesn't actually use the interim period to consider disputes or other information at all. Indeed, it appears that Fred Meyer may simply push responsibility for running background checks, flagging negative items, and considering employee explanations entirely onto GIS to the point where GIS actually controls the decision-making process--Fred Meyer employees and personnel are removed.

And of course, GIS also falsely tells employees that they've been apprised of their supposed right to dispute the accuracy of the reports by contacting courts or GIS's other supposed sources. This disclosure, which isn't true, is found in the adverse action notice and simply compounds the confusing nature of GIS and Fred Meyer's entire process.

In short, Fred Meyer and GIS limit the pre-adverse action process so as to render it essentially meaningless. Under the FCRA applicants and employees have the right to discuss negative items that, while accurate, may be explained in such a manner that the employer doesn't find the item(s) to be dispositive. The ability to explain items in a consumer report is integral for preserving the privacy rights underlying the FCRA. Fred Meyer ignored this and deprived Walker of his rights as codified in the statute. Walker plainly has standing to proceed.

## IV.    CONCLUSION

Fred Meyer's Disclosure and Authorization forms fail to "standalone" as required under the FCRA. They are full of extra information that render them confusing to Walker and other applicants and employees. Additionally, Fred Meyer improperly directs employees and applicants to lodge any "disputes" with GIS—no opportunity is afforded to anyone to discuss the contents of the report directly with Fred Meyer personnel. Finally, Walker enjoys standing to sue for these violations both under Spokeo and under Article III more generally, even if he didn't dispute any inaccurate information within the 5 business days that GIS provided. Fred Meyer's bid for dismissal fails and the case should proceed with discovery.

WHEREFORE, Plaintiff Walker respectfully requests that the Court deny Defendant Fred Meyer's Rule 12(b)(6) and Rule 12(b)(1) Motions to Dismiss and award such additional relief as the Court deems necessary, reasonable, and just.

Dated: January 11, 2018                          Respectfully submitted,

                                                 /s/ Patrick H. Peluso

                                                 Steven L. Woodrow
                                                 swoodrow@woodrowpeluso.com
                                                 Patrick H. Peluso
                                                 ppeluso@woodrowpeluso.com
                                                 Woodrow & Peluso, LLC
                                                 3900 East Mexico Ave., Ste. 300

Denver, CO 80210
Main: 720-213-0675
Fax: 303-927-0809

**Neal Weingart**
Neal Weingart Attorney at Law, LLC
1001 SW Fifth Ave.
Suite 1415
Portland, OR 97204
503-379-9933
Email: neal@nealweingartlaw.com


*Pro Hac Vice*

*Attorneys for Plaintiff and the Putative
Class*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7,963 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/ Patrick H. Peluso

26

## **CERTIFICATE OF SERVICE**

I, Patrick H. Peluso, an attorney, hereby certify that I served the foregoing papers by causing true and accurate copies of such papers to be transmitted to all counsel of record through the Court's electronic filing system on January 11, 2018.

/s/ Patrick H. Peluso