# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DANIEL WALKER, individually and on behalf
of all others similarly situated,

       Plaintiff,

  v.

FRED MEYER, Inc., a Delaware corporation,

       Defendant.

Case No. 3:17-cv-01791-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff Daniel Walker ("Walker"), individually and on behalf of all others similarly situated, has filed a class action complaint alleging two violations of the Fair Credit Reporting Act ("FCRA"). He contends that defendant Fred Meyer, Inc. ("Fred Meyer") obtained and used consumer reports in the hiring process without providing (1) a stand-alone disclosure prior to obtaining the consumer report, in violation of 15 U.S.C. § 1681b(b)(2)(A), and (2) a proper pre-adverse action notice before taking adverse action, in violation of 15 U.S.C. § 1681b(b)(3). Compl., ECF #1. Fred Meyer moves to dismiss the complaint for failure to state a claim pursuant to FRCP 12(b)(6) and to dismiss count two for lack of Article III standing pursuant to

1 – FINDINGS AND RECOMMENDATIONS

FRCP 12(b)(1).  ECF #24.  For the reasons discussed below, Fred Meyer's motion to dismiss should be GRANTED.

## FACTUAL BACKGROUND

In March 2017, Walker applied for employment with Fred Meyer and was hired as an associate at a Fred Meyer store located in Portland, Oregon.  Compl. ¶¶ 13-14, ECF #1.  As part of the applicant screening process, he was provided with several forms, including:

> (1) the Offer Acceptance Acknowledgement ("Offer Acceptance") (ECF #24-2), by which Walker acknowledged his ability to perform the duties of the job and his understanding that the offer of employment was contingent upon satisfactory results on a background check and drug screen;
>
> (2) the Disclosure Regarding Consumer Reports and Investigative Consumer Reports ("Disclosure") (ECF #24-3), setting forth the FCRA disclosures concerning consumer reports and requiring an acknowledgement of receipt; and
>
> (3) the Authorization Regarding Consumer Reports and Investigative Consumer Reports ("Authorization") (ECF #24-4), authorizing GIS to perform the investigation required to prepare the consumer reports.

Walker executed each of these forms on March 21, 2017.[1]

The Disclosure consisted entirely of the following paragraphs, with a signature line to acknowledge receipt:

---

[1] The court takes judicial notice of the Offer Acceptance, Disclosure, and Authorization, as well as the pre-adverse action notice and its enclosures and the adverse action notice under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("A court may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached the [plaintiff's] pleading.") (internal quotation marks omitted) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)). Walker references these documents throughout his complaint, and Fred Meyer attached these documents to its briefing.  *See* ECF # 24-2 to 24-8.

2 – FINDINGS AND RECOMMENDATIONS

> We ([t]he Kroger family of companies) will obtain one or more consumer reports or investigative consumer reports (or both) about you for employment purposes. These purposes may include hiring, contract, assignment, promotion, reassignment, and termination. The reports will include information about your character, general reputation, personal characteristics, and mode of living.
>
> We will obtain these reports through a consumer reporting agency. The consumer reporting agency is General Information Services, Inc. GIS's address is P.O. Box 353, Chapin, SC 29036. GIS's telephone number is (866) 265-4917. GIS's website is at www.geninfo.com.
>
> To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.
>
> You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.
>
> If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.

ECF #24-3.

Walker commenced his contingent employment, and GIS procured a consumer report containing his criminal history. Compl. ¶¶ 15, 21, ECF #1. Walker's criminal history revealed a felony conviction for Arson in the First Degree. ECF #24-6.

On April 3, 2017, GIS sent Walker a pre-adverse action notice, as required by 15 U.S.C. § 1681b(b)(3), enclosing a copy of the consumer report and a Dispute Request Form to dispute the findings. Compl. ¶ 23, ECF #1; ECF #24-5. Walker was instructed to fax the completed Dispute Request Form to GIS within five days because Fred Meyer "has or will be completing their review of your application within the next few days, and may take action based on the enclosed report." ECF #24-5. Walker also was notified of his "right to dispute the accuracy or

completeness of any information contained in the report by contacting GIS directly." *Id*. Walker does not allege that he completed the Dispute Request Form within five business days or that he contacted GIS to dispute the report's findings as directed.

On or about April 10, 2017, Walker received notice from GIS that Fred Meyer was taking adverse action based on the consumer report that GIS had obtained, and Walker's employment was terminated. Compl. ¶ 24, ECF #1.

On November 8, 2017, Walker filed suit, alleging that the disclosures provided to him were "confusing" and that "he was unable to meaningfully evaluate and understand the nature of the report Fred Meyer intended to obtain." Compl. ¶ 20, ECF #1. Walker further alleges he was denied a meaningful opportunity to discuss and dispute the report prior to adverse action because he was directed to GIS, Fred Meyer's agent, rather than directly to Fred Meyer. *Id*. at ¶ 26.

## STANDARDS

A motion to dismiss for failure to state a claim under FRCP 12(b)(6) may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the plaintiff. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1107 n.1 (9th Cir. 2017) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)); *see also Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the court need not credit a plaintiff's "legal conclusions," the presumption of truth indisputably extends to all "factual allegations" in a

complaint, however "conclusory." *Iqbal*, 566 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

A party may move to dismiss a claim for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1). Federal courts are courts of limited jurisdiction and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To show standing, a plaintiff must demonstrate (1) an injury-in-fact that is (2) fairly traceable to defendant's conduct and that (3) the court may adequately redress. *Id.* at 560–61. "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Id.*

## FINDINGS

**I.      Count I: Violation of 15 U.S.C. § 1681b(b)(2)(A)(i) ("Stand-Alone" Requirement)**

In his first claim, Walker contends that presenting the Offer Acceptance, Disclosure, and Authorization to him at the same time was impermissibly confusing and duplicative, and included extraneous information in violation of the FCRA requirement that the disclosure be "stand-alone." Compl. ¶ 41, ECF #1. Because the Offer Acceptance and Acknowledgment are separate documents and the Disclosure satisfies the FCRA stand-alone requirements, the motion to dismiss should be granted.

The FCRA provides that a person may not procure a consumer report for employment purposes with respect to any consumer, unless—

> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

On its face, the FCRA requires a document that "consists solely of the disclosure"; however, it also allows the written disclosure form to include a provision authorizing the consumer report. *Id*. Although there is no clear pronouncement of what else may be included, the written disclosure may not "be encumbered with extraneous information." *FTC Advisory Opinion to Coffey* (Feb. 2, 1998).

The FTC has advised, and courts in this circuit have agreed, that "some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure." *Id*.; *see Case v. Hertz Corp.*, 2016 WL 1169197, *3 (N.D. Cal. Feb. 26, 2016) (citing *FTC Advisory Opinion to Coffey*). It is permissible to include information that is "closely related to the FCRA disclosure" and serves to "focus an applicant's attention on the FCRA disclosure." *Lagos v. Leland Stanford Junior Univ.*, 2015 WL 7878129, at *2 (N.D. Cal. Dec. 4, 2015); *Feist v. Petco Animal Supplies, Inc.*, 218 F. Supp.3d 1112, 1115 (S.D. Cal. 2016) (noting that some additional information can be included in the disclosure); *Shelton v. Hal Hays Constr., Inc.*, 2016 WL 8904414, at *3 (C.D. Cal., July 29, 2016) (noting that the term "solely" may not be as strictly construed as the plaintiff urges).

6 – FINDINGS AND RECOMMENDATIONS

In *Coleman v. Kohl's Department Store*, for example, the plaintiff alleged that the provided disclosure violated 15 U.S.C. 1681b(b)(2)(A), and the defendant moved to dismiss. 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015). The disclosure at issue stated (1) that Kohl's would use a consumer reporting agency to obtain consumer reports or investigative consumer reports on the applicant; (2) that the report could include personal information such as criminal history, past employment, personal references, drug offenses, and sex offender status; (3) the name, address, and contact information for the consumer reporting agency; (4) the method by which the applicant may dispute the report; and (5) that Kohl's may rely, in whole or in part, on the information gathered in the report to make hiring decisions. 2015 WL 5782352, at *2. The court found that the document, which "contains a disclosure and authorization provision and also identifies other relevant information such as the consumer reporting agency and the consumer's right to review the report obtained," did not run afoul of the FCRA's "solely of the disclosure" requirement and granted the motion to dismiss. *Id.* at *5.

It is well settled in this circuit that the inclusion of certain types of additional information, for example, a waiver of liability for the employer, *does* run afoul of the stand-alone requirement. In *Syed v. M-I, LLC*, the Ninth Circuit stated:

> An authorization requiring the job applicant's signature focuses the applicant's attention on the nature of the personal information the prospective employer may obtain, and the employer's inability to obtain that information without his consent. But a liability waiver does just the opposite—it pulls the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights he must forego if he signs the document.

853 F.3d 492, 502 (9th Cir., 2017); s*ee also Cunha v. IntelliCheck, LLC*, 254 F.Supp.3d 1124, 1130 (N.D. Cal., 2017) (finding document did not consist "solely" of the disclosure where it contained a waiver); *Case*, 2016 WL 1169197, at *5 (finding an FCRA violation where disclosure included an acknowledgement that employment decisions are based on legitimate

7 – FINDINGS AND RECOMMENDATIONS

non-discriminatory reasons); *Harris v. Home Depot U.S.A., Inc*., 114 F.Supp.3d 868, 870 (N.D. Cal., 2015) (prohibiting the inclusion of waivers as beneficial only to the employer); *Dunford v. Am Databank, LLC*, 64 F. Supp. 3d 1378, 1388 (N.D. Cal. 2014) (holding "it is quite clear (and seems undisputed) that American DataBank's Disclosure & Release Form would have violated Section 1681b(b)(2)(A)(i) by containing a release").

Likewise, including consent to release the consumer report to third parties has been held to violate the FCRA's stand-alone disclosure requirement. In *Meza v. Verizon Commc'ns, Inc*., the court denied Verizon Communication's motion to dismiss where the disclosing document "did not consist solely of the disclosure, but included additional provisions not authorized by the FCRA, including a provision that stated: 'Further, I consent to and authorize Verizon to release a copy of any consumer report or investigator consumer report to an authorized Verizon customer if required by a customer contract.'" 2016 WL 4721475, at *2 (E.D. Cal., 2016); *see also Feist*, 218 F.Supp.3d at 1113 (rejecting the inclusion of an authorization allowing other entities to disclose information about the applicant).

Also impermissible is the inclusion of lengthy state law provisions. *Lagos*, 2015 WL 7878129, at *2 (finding state law notices do not contribute to the disclosure required by the FCRA); *see also Case*, 2016 WL 1169197, at *5 (rejecting state-specific disclosures unrelated to potential employment in California); *but see Noori v. Vivint, Inc*., 2016 WL 9083368, at *5 (C.D. Cal. Sept. 6, 2016) (finding the inclusion of *some* state law provisions is "far different from such a disclosure being included within a multi-page employment application, or one of many disclosures about unrelated things").

The Fred Meyer Disclosure offends none of these prohibitions. It is instead analogous to the concise form upheld in *Coleman*, in which the court failed to find any extraneous statements.

8 – FINDINGS AND RECOMMENDATIONS

2015 WL 5782352 at *5.  Like *Coleman*, the Disclosure contains a short, clear disclosure and "identifies other relevant information such as the consumer reporting agency and the consumer's right to review the report obtained."  *Id*.  As courts interpreting the FCRA stand-alone provision have required, the Disclosure is limited to information that is "closely related to the FCRA disclosure."  *Lagos*, 2015 WL 7878129, at *2; *see also Reed v. CRST Van Expedited, Inc.*, 2017 WL 5633153 at * 3 (upholding a disclosure that did not include "blanket authorizations to release information, waivers of rights, or extraneous information about state laws").

Moreover, presenting the statutorily sufficient Disclosure with other employment documents, i.e., the Offer Acceptance and the Authorization, did not destroy its stand-alone character.  As explained by the Central District of California:

> The FCRA does not prohibit an employer from providing an FCRA disclosure as part of the employer's job application process. Nor does the FCRA prohibit an employer from providing an FCRA disclosure at the same time the employer provides other employment documents. In absence of Ninth Circuit authority, the Court declines to impose requirements on employers that are not enumerated in the FCRA.

*Newton v. Bank of America*, 2015 WL 10435907, at *8 (C.D. Cal., May 12, 2015*); see also Marquez v. Bank of America*, 2018 WL 1948864, at *5 (N.D. Cal., Apr. 25, 2018) (following the guidance in *Newton* to uphold disclosure where liability release was provided in a separate document); *Coleman*, 2015 WL 5782352, at *6 ("[T]he [c]ourt is not aware of any authority supporting this contention that merely presenting these documents together violates § 1681b(b)(2)(A)(i)[.]").

Additionally, the fact that Fred Meyer provided Walker with a disclosure that discussed both consumer reports and investigative reports does not run afoul of the FRCA.  Under the FCRA, a "consumer report" is defined as:

///

9 – FINDINGS AND RECOMMENDATIONS

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for ... employment purposes.

15 U.S.C. § 1681a(d)(1).  An "investigative consumer report" is defined as:

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

15 U.S.C. § 1681a(e). The central difference between the two types of reports is that an investigative consumer report includes interviews with friends, references, and others.

The two types of reports have separate disclosure requirements under the FCRA, i.e., 15 U.S.C. § 1681d(a) and 15 U.S.C. § 1681(d)(b), respectively.  However, as plaintiff acknowledges, employers may combine the disclosures, provided the investigative consumer report disclosures do not "overshadow" the consumer report disclosures.  *See FTC Advisory Opinion to Willner* (Mar. 25, 1999); *see also Coleman*, 2015 WL 5782352, at *2 (upholding a combined disclosure of consumer reports and investigative consumer reports).  Here, there is no "overshadowing."  Instead, the final paragraph of Fred Meyer's document, which pertained to investigative consumer reports, merely sets forth the right to obtain a complete disclosure of the "scope and nature" of the investigation performed, and does not "overshadow" the section 1681b(b)(2)(A)(i) disclosures.  ECF #24-3.

Because the Disclosure is consistent with judicial interpretation of the FCRA's stand-alone requirement as a matter of law, Count I should be dismissed.

///

///

## II. Count II: Violation of 15 U.S.C. § 1681b(b)(3) (Pre-Adverse Action Notice)

### A. Failure to State a Claim

Walker claims that Fred Meyer's pre-adverse action notice "frustrates the purpose of the FCRA" by directing employees to contact GIS, rather than Fred Meyer, with concerns about the consumer reports. Compl. ¶ 51, ECF #1. Such notice, Walker argues, "robs applicants and employees of any meaningful chance to discuss any aspect of their consumer reports with [the employer] prior to the decision to fire him, as intended by the FCRA." *Id.* Walker urges the court to find that employees and applicants must be instructed to discuss and dispute the consumer reports directly with the employer prior to adverse action. Because there is no such requirement in the FCRA or judicial opinions, Walker's second claim should be dismissed.

The FCRA states, in relevant part:

> [i]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such action shall provide to the consumer to whom the report relates (A) a copy of the report; and (B) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission[ ]

15 U.S.C. § 1681b(b)(3). On its face, the FCRA does not require the employer to give the employee or applicant notice of a right to discuss the contents of the report directly with the employer.

Nor does the purpose behind the statute require recourse with the employer directly. The pre-adverse action notice requirement affords "employees time to discuss reports with employers *or otherwise respond before action is taken.*" *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 634 (D. Or., 2015) (quoting *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.,* 848 F.Supp.2d 532, 537 (E.D. Pa.2012) (emphasis added). To comply with the statute, an employer

11 – FINDINGS AND RECOMMENDATIONS

who intends to take adverse action must give the applicant an opportunity to change the employer's mind:

> Congress could have required notice and a copy of the report within a reasonable time *after* the adverse action. Such a requirement still would have helped consumers, who could have taken action to correct inaccuracies contained in the background reports to avoid similar problems in the future. But Congress chose to require notice *before* the adverse action, signifying its intent to give applicants the opportunity to change the employer's mind with respect to the current job opportunity.

*Magallon*, 311 F.R.D. at 633 (citing *Brown v. Lowe's Cos., Inc.,* 52 F.Supp.3d 749, 757 (W.D.N.C. 2014)); *Syed v. M-I, LLC*, 853 F.3d 492, 497 (9th Cir. 2017) (citing the "opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report"); s*ee also Demmings v. KKW Trucking, Inc.*, 2017 WL 1170856 at *9 (D. Or. Mar. 29, 2017).

This statutory purpose leaves no doubt that Walker has a right to try and forestall adverse action by providing additional information or explanation. However, there is no prohibition in the statute or the case law that an employer cannot use an agent to facilitate that process.

A recent factually-analogous decision upheld the use of an agent for the FCRA dispute process. In *Reid v. Kroger Co.*, issued after Fred Meyer's motion to dismiss was taken under advisement, Kroger also partnered with third-party consumer reporting agency GIS. 2018 WL 1327242 (S.D. Ohio Mar. 15, 2018). The disclosure was nearly identical to the one presented to Walker in this action. While not binding, the decision of the Southern District of Ohio is instructive. As in this case, the pre-adverse action informed the plaintiff that she had "the right to dispute the accuracy or completeness of any information contained in the report by contacting GIS directly." *Id*. at *3. The court upheld this pre-adverse action notice and found that "the FCRA does not require users of consumer reports, like Kroger, to make individual employees . . . available to assist applicants . . . with their disputes." *Id*. at *6. Instead, the FCRA only requires

12 – FINDINGS AND RECOMMENDATIONS

employers to provide employees or applicants with copies of the consumer reports and a summary of the FCRA rights.  *Id.*  It was undisputed in *Reid*, as it is in this case, that the employer did so.  *Id.*; *see* ECF #24-5.

Absent case law, Walker asks the court to look to FTC advisory opinions as the source of his right to dispute the consumer report directly with his employer; however, the FTC opinions on which he relies are not instructive.  The *FTC Advisory Opinion to Weisberg*, cited in Walker's complaint, discusses only the "right to dispute inaccurate or incomplete information in a consumer report," and does not require that discussion to be with the employer, as opposed to a designated agent.  *FTC Advisory Opinion to Weisberg* (June 27, 1997).

Walker's reliance on the *FTC Advisory Opinion to Coffey* is equally unavailing.  In context, it is clear the *Coffey* letter is addressing the length of time—not the channel—that is appropriate for pre-adverse action dispute:

> Second, you ask if there is any specific amount of time that must elapse from the time the required items are provided to the consumer and the employer's adverse employment action. The law is silent as to how long the employer must wait after making the Section 604(b)(3) pre-adverse action disclosure before actually taking adverse action; it states only that the specified items be provided before the adverse action is taken. Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the clear purpose of the provision to allow consumers to discuss the report with employers before adverse action is taken.

*FTC Advisory Opinion to Coffey* (Feb. 11, 1998).  The *Coffey* opinion, while referencing post-report discussions with employers, does not support the proposition that directing such discussions to an employer's designated agent offends the FCRA.

The express requirements and purpose of the FCRA are satisfied where, as here, clear instructions for how to contest the reports were provided and the necessary forms were made available.  Count II therefore should be dismissed for failure to state a claim.

13 – FINDINGS AND RECOMMENDATIONS

B.     **Article III Standing**

Fred Meyer urges the court to dismiss the 15 U.S.C. § 1681b(b)(3) claim as a "bare procedural violation" of the FCRA "divorced from any concrete harm," under the *Spokeo* test for Article III standing.  Motion to Dismiss 21, ECF #24; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  Under *Spokeo,* a plaintiff's allegation of a statutory violation alone does not confer standing.  Such a plaintiff is still required to meet the "irreducible constitutional minimum" of standing by alleging facts demonstrating he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan,* 504 U.S. at 560-61; *Friends of the Earth, Inc. v. Laidlaw Envlt. Servs.,* 528 U.S. 167, 180–181 (2000).

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan,* 504 U.S. at 560 (internal quotation marks omitted).  The court in *Spokeo* applied this standard to an alleged FCRA violation and concluded that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation.  *Spokeo*, 136 S.Ct. at 1549; *see also Demmings*, 2017 WL 1170856, at *2 (finding standing can be "established by pleading a violation of a right conferred by statute so long as the plaintiff alleges a distinct and palpable injury to himself" (citations omitted)).

Here, Walker alleges his injury in fact was the lack of an "adequate opportunity to remedy issues contained in the consumer report."  Compl. ¶ 4, ECF # 1.  As discussed above, a statutorily adequate opportunity was provided and Walker declined to participate in that process.

Walker does allege, and this court must accept as true, that there were inaccuracies in the consumer report. Compl. ¶22, ECF #1. However, this alone cannot give rise to standing to sue the employer who requested the report. If it could, the FCRA dispute provisions would be superfluous. *See Demmings*, 2017 WL 1170856 at *9 (noting that Congress did not "condition the protections in the FCRA on the accuracy or inaccuracy of the information contained in the consumer report").

The complaint is silent as to Walker's reasons for letting the dispute period expire. Even drawing all reasonable inferences in favor of the nonmoving party, this court cannot infer that Fred Meyer bears the responsibility for Walker's non-responsiveness. Assuming Walker has alleged a FCRA violation, and as discussed above there is no statutory requirement that an employer must communicate directly with an employer, he has not alleged any injury beyond the mere statutory violation and therefore lacks standing.

## RECOMMENDATIONS

Defendant's motion to dismiss (ECF # 24) should be GRANTED and the complaint DISMISSED with prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Monday, May 21, 2018. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

///

15 – FINDINGS AND RECOMMENDATIONS

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  May 7, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge
