1        IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3                  PORTLAND DIVISION

4

5   DANIEL WALKER, individually      )
    and on behalf of all others      )
6   similarly situated,              )
                                     )
7                   Plaintiff,       )   No. 3:17-cv-01791-YY
                                     )
8              v.                    )   February 27, 2018
                                     )
9   FRED MEYER, INC., a Delaware     )   Portland, Oregon
    corporation,                     )
10  _____ )
                    Defendant.       )
11

12

13

14              TRANSCRIPT OF PROCEEDINGS

15            (Telephonic Oral Argument)

16

17      BEFORE THE HONORABLE YOULEE YIM YOU

18   UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

19

20

21

22

23  Court Reporter:          Ryan White, RMR, CRR, CSR/CCR
                             United States District Courthouse
24                           1000 SW 3rd Avenue, Room 301
                             Portland, Oregon 97204
25                           (503) 326-8184

```
 1                          APPEARANCES

 2

 3   For the Plaintiff:        WOODROW & PELUSO, LLC
                               By:  STEVEN L. WOODROW
 4                             swoodrow@woodrowpeluso.com
                               3900 E Mexico Avenue, Suite 300
 5                             Denver, Colorado 80210
                               (720) 213-0675
 6
                               NEAL WEINGART ATTORNEY AT LAW LLC
 7                             By:  NEAL WEINGART
                               neal@nealweingartlaw.com
 8                             1001 SW 5th Avenue, Suite 1415
                               Portland, Oregon 97204
 9                             (503) 379-9933

10   For the Defendant:        DINSMORE & SHOHL LLP
                               By:  FAITH C. WHITTAKER
11                             faith.whittaker@dinsmore.com
                               MICHAEL B. MATTINGLY
12                             michael.mattingly@dinsmore.com
                               255 E 5th Street, Suite 1900
13                             Cincinnati, Ohio 45202
                               (513) 977-8491
14
                               MILLER NASH GRAHAM & DUNN LLP
15                             By:  TAYLOR D. RICHMAN
                               taylor.richman@millernash.com
16                             111 SW 5th Avenue, Suite 3400
                               Portland, Oregon 97204
17                             (503) 224-5858

18

19

20

21

22

23

24

25
```

```
 1                    (February 27, 2018; 9:32 a.m.)

 2

 3                      P R O C E E D I N G S

 4

 5            THE COURT:  Good morning.  This is Judge You.  We're

 6   on the record.  This is case No. 17-cv-1791.  The name of the

 7   case is Walker v. Fred Meyer.

 8            Counsel, please state your appearances for the record

 9   starting with plaintiff's counsel.

10            MR. WOODROW:  Good morning, Judge.  Steven Woodrow for

11   the plaintiff.

12            MR. WEINGART:  And good morning, Your Honor.  This is

13   Neal Weingart, also for the plaintiff.

14            THE COURT:  All right.  How about counsel for the

15   defense?

16            MS. WHITTAKER:  Good morning, Your Honor.  This is

17   Faith Whittaker for the defendant.

18            MR. MATTINGLY:  Your Honor, this is Mike Mattingly,

19   also for the defendant.

20            MR. RICHMAN:  Good morning, Your Honor.  This is

21   Taylor Richman, global counsel for the defendant.

22            THE COURT:  Okay.  Good morning again.

23            Let me remind you that we are on the record.  We have

24   a court reporter who is also on the line, so just remember that

25   she is always present and making her very best attempt to
```

1    provide an accurate transcript of the proceedings.  So please

2    speak slowly and clearly, and if you can, try to remember to

3    identify yourself before speaking.

4              We are here on the defendant's motion to dismiss for

5    failure to state a claim and also for lack of jurisdiction.  I

6    have the motion.  I received the motion as well as the exhibits,

7    also the response in addition to other exhibits and the reply.

8              Let's start with the question with respect to the

9    standalone disclosures.

10             And what I'm going to do is, of course, preface my

11   questions with the statement that you all know this case far

12   better than I do, and what I'm hoping is that you can help to

13   explain some things and fill in some gaps for me.

14             Now, the complaint in this case, as you know, says

15   that this was an online application.  And I'm just pulling up

16   the complaint here because I want to refer to a section of it.

17             I'm referring to paragraph 13 which says that

18   Mr. Walker applied for a job with Fred Meyer using Fred Meyer's

19   online application process.  And then No. 15 says, "Upon

20   beginning employment, plaintiff was required to complete various

21   acknowledgements of company disclosures including a series of

22   disclosures regarding his background and criminal history."

23             And then paragraph 17 refers to some other

24   documents -- actually, let's move to paragraph 18.

25             And so I guess what's unclear to me, and perhaps

1    you've explained it in your pleadings and I've just missed it,

2    but can I ask, the disclosure at issue, which is Exhibit C, when

3    was that provided to Mr. Walker and in what context?

4            I guess -- and because this is a motion to dismiss

5    based on the complaint, where can I ascertain that information

6    in the complaint?

7            Let me start with plaintiff's counsel.

8            MR. WOODROW:  Yes, Judge.

9            While we need discovery to clear up some of these

10   factual issues, it's plaintiff's understanding that there was an

11   online application process.  Then Mr. Walker had to --

12           THE CLERK:  Excuse me, Your Honor.  Your Honor?

13           THE COURT:  Yes.

14           THE CLERK:  The court reporter needs to know who is

15   speaking, please.

16           MR. WOODROW:  My apologies.  It's Steven Woodrow,

17   Your Honor, for the plaintiff.

18           THE CLERK:  Thank you.

19           MR. WOODROW:  It's our understanding, Judge, and we

20   would need confirmatory discovery on it, that Mr. Walker applied

21   using the online application process, was then called in to Fred

22   Meyer where he in person was presented with documents, and that

23   these disclosures referenced in these paragraphs are those

24   disclosures that were provided in -- not in the online

25   application but in that in-person session or sessions.

1          THE COURT:  And I think that what you're saying

2     arguably could be inferred from the facts as they're alleged in

3     the complaint, but I just wanted to clarify.  I just wanted to

4     make an attempt to clarify that.

5          Additionally, the disclosure appears to have been

6     signed -- there actually appears to be a physical signature

7     rather than a digital signature.  Again, referring to Exhibit C.

8          But -- so I just wanted to clarify because I did see

9     one case -- I can't remember which case it was, but in doing

10    some research on this I saw one case in which I think that there

11    were online disclosures and there was a question as to whether

12    or not the -- whether or not they were separate documents or all

13    the same.

14          Nevertheless, anything that the defense would like to

15    say in that regard?

16          MR. MATTINGLY:  Your Honor, this is Mike Mattingly.

17          We would agree that the Exhibit C to our motion, which

18    was executed by Mr. Walker on 3/21/17, was executed at the store

19    during his in-person interview, and that date coincides with

20    the -- his interview at the store.

21          THE COURT:  Okay.  Great.  Thanks so much for the

22    clarification.

23          All right.  So then moving to the substance of the

24    issues, I would like plaintiff to explain, looking at Exhibit C,

25    is it your argument that the last three paragraphs of that

1    document, that that is where, for lack of a better way to put

2    it, the line is crossed in terms of the requirements of

3    1681b(B)(2)(A)(i)?

4         MR. WOODROW:  Yes, Judge.

5         I think we take a more wholistic approach than just

6    limiting it to the last three paragraphs.  I think when it's

7    read with the acknowledgment of receipt and the authorization

8    that followed it, it's pretty clear that the disclosure is

9    riddled with extraneous information.  It combines investigative

10   consumer reports with ordinary consumer reports.  It distracts

11   from the consumer report disclosures.  It contains information

12   about interviews and bringing folks to accompany you when you go

13   view information and other extraneous info.

14        It doesn't contain the one thing that the statute

15   authorizes, and that's an authorization which says I allow for

16   the obtaining of a consumer report.  And what the defendant does

17   here is they provide a separate authorization page, but that's

18   riddled with extraneous information too.

19        And so when you read these two documents together,

20   Your Honor, it's pretty clear that they don't stand alone.  We

21   would allege that if the purpose of the standalone disclosure

22   requirement and the allowance for an authorization in one

23   document so the applicants know what they're authorizing,

24   separate -- separating them but loading up the authorization

25   with extra information when the disclosure itself combines

1  investigative consumer report information with ordinary

2  information, it defeats the purpose of the statute, and we

3  allege specifically in paragraph 20 that Mr. Walker was confused

4  and that ordinary consumers would be similarly confused.

5       And it's not clear whether the person is authorizing

6  an investigative consumer report, a consumer report, they're

7  just acknowledging receipt of this document, or what.  That's

8  the problem.

9       THE COURT:  Let me ask you this.  So in looking at

10  subsection (2)(A), in subsection (i) it says that this

11  standalone document has to be provided, and then it separately

12  says in subsection (2) that the consumer has to authorize in

13  writing.

14       Is there anything in this statute that requires the

15  disclosure and the authorization -- or is there any other

16  authority that requires the disclosure and the authorization to

17  be in the same document?

18       MR. WOODROW:  No, Judge.  The disclosure and the

19  authorization do not have to be in the same document.

20       What the authorities say, and what they instruct, is

21  that the only thing that the standalone disclosure can contain,

22  and without extra -- the only extra information it can contain

23  without it losing its standalone disclosure status is the

24  authorization because the authorization is simply supposed to

25  authorize the obtaining of a consumer report.  It's not supposed

1    to give carte blanche authority to a consumer reporting agency

2    blessing whatever methods that consumer reporting agency has

3    decided to use to gather the information.

4            And that's the problem with the authorization here.

5    To read this authorization as a proper one simply because it's

6    in writing when it is loaded up with allowing GIS to, you know,

7    gather information from any public or private information

8    source, when you have that, it defeats the intent of the statute

9    which is to let people know clearly and conspicuously that they

10   are authorizing the obtaining of a consumer report, nothing

11   else.

12           THE COURT:  Let me ask you this.  Let me ask you this.

13           So subsection (2), the authorization, there's no

14   requirement that the authorization be in a standalone setting;

15   correct?

16           MR. WOODROW:  Correct.  It can be included with the

17   disclosure.

18           THE COURT:  Well, let me ask you this.  So

19   hypothetically if I concluded that there were portions of the

20   disclosure, Exhibit C, that were -- that did not comply with

21   subsection (i), so for example if I looked at Exhibit C and

22   there -- these last two paragraphs, if I found that, including

23   those last two paragraphs, didn't comply with subsection

24   (i) -- are you following me so far?

25           MR. WOODROW:  Yes.

1          THE COURT:  -- then what does it matter what is

2    contained in -- what does it matter what additional information

3    is contained in Exhibit D --

4          MR. WOODROW:  Technically, Your Honor --

5          THE COURT:  -- other than the authorization?

6          MR. WOODROW:  Yes, Judge.  I understand the question,

7    the Court's question.

8          And in that case it wouldn't -- it wouldn't change the

9    fact that there's a violation; it just simply compounds to the

10   confusion.  And that's what those allegations add.  It adds

11   color to the complaint that not only does the quote/unquote

12   standalone disclosure not stand alone, but the authorization is

13   also confusing, and that when you look at these documents that

14   the -- that these applicants and employees are being provided,

15   it does not comport with the statute's requirement that they be

16   clearly and conspicuously notified that they are going to have a

17   consumer report obtained about them.

18         If the Court were to find that the bottom half of

19   Exhibit C is plausible -- counts it as a plausible violation of

20   the FCRA, then that's what this case is going to be about.

21         THE COURT:  The reason I'm asking is because

22   subsection (2) does not contain that clear and conspicuous

23   language or any standalone language, and here we have an

24   authorization in Exhibit D -- and I understand what you're -- I

25   understand your argument that it's altogether confusing, but I'm

1  parsing it down more specifically than that.

2          So in any event, let me ask you another question.

3          So we've talked about the last two paragraphs, or I

4  mentioned the last two paragraphs.  I want you to look at the

5  third paragraph and explain to me why the third paragraph is

6  really any different than the last sentence of the first

7  paragraph.

8          MR. WOODROW:  You're talking about the paragraph "To

9  prepare the reports GIS may investigate"?

10         THE COURT:  Yes.  And so in looking at that, it seems

11 to me that that paragraph essentially reiterates what was

12 perhaps more generally stated in the last sentence of the first

13 paragraph.  So what's the harm in adding the third paragraph?

14         MR. WOODROW:  Certainly, Judge.

15         The information contained in the third paragraph

16 actually expands upon the scope of the first paragraph.  The

17 third paragraph references information that some of it can be

18 included in a consumer report, but some of it's also stuff that

19 you can get in investigative consumer reports like, you know,

20 references, et cetera.

21         And so it's confusing to the consumer whether this

22 paragraph is supposed to be a mundane disclosure that's allowed

23 and permitted with respect to ordinary consumer reports, or is

24 it actually touching upon the nature and scope of the

25 investigation to be performed as part of an investigative

1  consumer report.

2         THE COURT:  I understand.

3         MR. WOODROW:  That's why -- I'm sorry, Judge.  But

4  this is why the statute requires separate disclosures.

5         THE COURT:  Okay.  I understand.  Thank you.

6         All right.  So let me ask the defense if you would

7  like to comment or respond to anything that plaintiff's counsel

8  has said with respect to the questions that I've asked.

9         MR. MATTINGLY:  Absolutely, Your Honor.  This is Mike

10  Mattingly.

11        Your Honor, first and foremost, with respect to

12  the -- and we addressed this in our reply -- the complaint

13  doesn't contain an allegation, a violation of

14  1681b(B)(2)(A)(ii).  That simply is not a cause of action.  So I

15  don't know why we're addressing it specifically.

16        But to the extent that it is considered to be part of

17  another claim, we would agree that there is no requirement in

18  the statute which requires the authorization to be a standalone

19  clear and conspicuous document.  So regardless of what

20  information is in there, one, there's no claim; and, two, it's

21  irrelevant.

22        With respect to the combination of consumer report

23  information or disclosures under 1681b(B)(2)(A)(i) and a

24  combination of investigative consumer report information as

25  authorized by 1681g, there is no problem with the combination.

1  In fact -- and the FTC opinion letter, *Willner*, that is cited in

2  the opposition by the plaintiff, specifically states that those

3  disclosures can be combined so long as the investigative

4  consumer report disclosure does not overshadow.

5        And so that's based on -- now we would have a further

6  discussion about the persuasiveness of *Willner* in light of the

7  *Syed* ruling in 2017.

8        But there's absolutely no problem with a limited

9  disclosure such as we have here in Exhibit C which tells the

10  consumer the basic parameters within which it either may obtain

11  a consumer report or investigative consumer report.  There's

12  nothing inappropriate in that.  Under statute, those are

13  authorized.  And there's no extraneous information, as a matter

14  of law.

15        THE COURT:  Okay.  All right.  So then let me ask just

16  generally if there's anything that you would like to argue with

17  respect to the standalone disclosure issue.

18        And I'll start with the defendant because it's your

19  motion.  Anything else that you would like to highlight?

20        And don't feel that you need to rehash all of the

21  arguments that you've made in your briefing, but I just wanted

22  to give you the opportunity, if you wanted, to highlight

23  anything with respect to this particular claim.

24        MR. MATTINGLY:  Yes, Your Honor.  And this is Mike

25  Mattingly again.  And I'll keep it brief because I think our

1  written positions outline standards -- the appropriate

2  standards.

3          So I just would like to say that, Your Honor, we

4  believe the form speaks for itself on its face.  The -- it only

5  includes -- the information that it included is -- as a matter

6  of law, is not extraneous.  It only references process for

7  obtaining consumer reports or potentially investigative consumer

8  reports as authorized by the law.  It does not include any sort

9  of the extraneous information that other district courts have

10  found to be impermissible such as the cases cited in the

11  opposition by the plaintiff that included extraneous state law

12  notices, statements of internal policy, EEO preferences, or even

13  liability waivers.

14          So none of that stuff is included here, Your Honor.

15  And rather, we would just point out that each and every

16  statement either informs the consumer, or in this case,

17  Mr. Walker, about Fred Meyer's FCRA process, the information

18  that would be obtained, describes the permissible purpose under

19  the statute for which we obtain the report, and most

20  importantly, some of his legal rights.  So with respect to that,

21  we would say the form speaks for itself.

22          The only other thing I would say, Your Honor, is with

23  respect to -- Mr. Walker has made the strategic decision to seek

24  statutory damages on behalf of a national class rather than

25  actual damages.  So with that comes a heightened burden that he

1   has to prove willfulness using a recklessness standard and which

2   is a higher standard, obviously, than negligence.

3          And the only other thing I would point out is that the

4   *Syed* case recently, the Ninth Circuit relying on the Supreme

5   Court has said that where an employer adopts a reading of the

6   statute runs a risk of error substantially greater than the risk

7   associated with a reading that was merely careless, that is

8   where a willful violation could occur.

9          The *Syed* court also acknowledged that it's possible to

10  imagine interpretations of 1681b(B)(2)(A) that would be

11  objectively unreasonable without rising to the level of

12  recklessness.

13         Clearly, Your Honor, it's Fred Meyer's position that

14  nothing in this disclosure is unreasonable.  But even if this

15  Court determines that anything was extraneous information and

16  was objectively unreasonable based on existing case law or the

17  statute, it clearly does not rise to the level of recklessness

18  given that each and every statement just seeks to inform the

19  consumer of their rights under the FCRA and describe the process

20  that would be undertaken so that they could sign a separate

21  acknowledgment that was knowing and voluntary.

22         So with that, Your Honor, that's what we take off

23  that.

24         THE COURT:  All right.  Thank you.

25         And so let me move back, then, to Mr. Woodrow.

1          Anything that you would like to highlight or respond

2     to?

3          MR. WOODROW:  Yes.  Thank you, Judge.  Steven Woodrow

4     very quickly.

5          Judge, Fred Meyer takes the allegations of the

6     complaint in the light most favorable to themselves.  We

7     expressly allege that the consumer report combined with the

8     investigative consumer report was confusing to the plaintiff and

9     to others.  Whether that can be true turns into a fact issue and

10    this Court should decline the invitation to decide as a matter

11    of law that all the extraneous information in this disclosure

12    isn't quote/unquote extraneous enough as a matter of law to

13    defeat the standalone disclosure requirement.

14         Similarly, Judge, willfulness is a fact issue.

15    Federal Rule 9 allows plaintiffs to plead knowledge generally

16    and intent generally.  I think Fred Meyer is asking for a

17    pleading burden that the federal rules simply don't require in

18    this situation.

19         The finder of fact will decide based on the evidence

20    of record whether or not Fred Meyer's combination and inclusion

21    of extraneous information was willful.  It's not something that

22    should be done on the pleadings, Your Honor.

23         With that, Judge, I think you have our arguments.

24         THE COURT:  Okay.  Thank you.

25         So let's then move on to the second claim with respect

1    to the pre-adverse action notice, and I'd like to start with the

2    plaintiff.

3              Can you explain to me your position as to where the

4    statute allows for the type of relief that you're seeking?

5              MR. WOODROW:  Certainly, Judge.

6              The statute requires employers to provide a

7    pre-adverse action notice, and it delegates to the FTC authority

8    to show opinions and guidance and to interpret what the statute

9    means on a limited basis.  And while the advisory opinions

10   aren't binding, they are persuasive, and for nearly 20 years,

11   Judge, they've held that employers have a burden to provide a

12   pre-adverse action notice with the purpose being that the

13   applicant or employee has a reasonable period of time to then

14   discuss any items in the report with the employer, with the

15   prospective employer.  Otherwise, there's no point to having the

16   pre-adverse action notice requirement at all.  It's just a

17   perfunctory piece of paper that the employee or applicant is

18   supposed to get.

19             The FTC has held repeatedly that it's not supposed to

20   be just some perfunctory piece of paper.  It actually serves a

21   purpose under the statute, to allow employees or applicants not

22   only to dispute inaccurate information, but to explain

23   potentially accurate entries that might not tell the full story.

24   Right?

25             THE COURT:  Can I stop -- Counsel, can I stop you

1   right there for just a moment.

2           We have a little bit of -- there's a little bit of

3   difficulty in hearing you, and I just want to make sure that

4   everyone is off a speakerphone because I'm hearing a little bit

5   of an odd crackling sound and I want to make sure the court

6   reporter can take everything down correctly.

7           So I'm sorry to interrupt you, Mr. Woodrow.  Could you

8   continue, please.

9           MR. WOODROW:  Certainly, Judge.

10          Can the court reporter let me know where I left off?

11          THE COURT REPORTER:  -- to allow employees or

12  applicants not only to dispute inaccurate information, but to

13  explain potentially accurate entries that might not tell the

14  full story.

15          MR. WOODROW:  Right, Judge.

16          So the purpose of the pre-adverse action notice

17  requirement is to afford applicants and employees this time

18  period.  That's what the FTC has said for 19 years and counting,

19  Your Honor.

20          It is not express -- expressly in the statute.  That's

21  why the FTC has suggested that employers provide a reasonable

22  period of time, and the most common period of time cited is five

23  business days.

24          Here it looks like GIS was trying to follow that

25  guidance, but it didn't provide people five business days -- it

 1    actually sent its final adverse action notice on the fifth

 2    business day -- and it doesn't allow or inform the applicant or

 3    employer that they can discuss these matters with the employer.

 4    It just directs any disputes regarding inaccurate information to

 5    GIS.

 6             And also, GIS then informs the applicant or employee

 7    in the final notice that the applicant and employee has been

 8    previously informed of their right to take up any inaccuracies

 9    with courts cited in the consumer report.

10             So what we have here, Judge, is, you know, a basic

11    failure to follow the FTC guidance.  The FTC guidance should be

12    considered highly persuasive, otherwise the entire purpose of

13    the pre-adverse action portion of the statute is rendered a

14    nullity.

15             THE COURT:  Okay.  I think I understand.

16             Let me ask Mr. Mattingly, any thoughts on that?

17             MR. MATTINGLY:  Yes, Your Honor.

18             To the extent FTC guidance is highly persuasive, as

19    plaintiff's counsel just said, it has been in place for

20    19 years, there are a -- there are numerous FTC decisions that

21    say the -- there are two avenues by which a -- someone of -- an

22    employer can obtain a consumer report and then meet any sort of

23    burden, assuming there is one, to discuss accurate yet negative

24    information such as Mr. Walker's accurate yet negative

25    information in this case.  One of those would clearly be to have

1    a direct discussion as suggested by the plaintiff in this case;

2    however, that is not the only opportunity to do that.

3           The FTC opinions include a discussion or allowing the

4    consumer to otherwise respond.  Fred Meyer has contracted with

5    GIS to provide adverse action notices, to provide a dispute

6    process, to send out forms to inform the consumers that they can

7    dispute or discuss any accurate -- inaccurate information and as

8    well as adverse action notices.

9           Now, Your Honor, this is important in light of the

10   congressional intent.  I am not aware -- and I don't know -- I'm

11   not aware of any case from *Spokeo* to the Ninth Circuit to this

12   very Court that has ever addressed congressional intent

13   being -- existing so that accurate information can be discussed.

14          In fact, you know, *Spokeo* said that Congress plainly

15   sought to curb dissemination of false information by adopting

16   procedures designed to decrease risk.  *Syed* said that Congress

17   recognizes a significant amount of inaccurate information that's

18   being reported by consumer reporting agencies and the

19   difficulties that consumers face getting such errors corrected,

20   and this --

21          THE COURT:  Mr. Mattingly, can you just slow down a

22   tad, please.

23          MR. MATTINGLY:  Oh, I'm sorry.  I apologize,

24   Your Honor.

25          And I was going to say and this Court even said

1   Congress intended to ensure that a potential employee would have

2   the opportunity to address any inaccurately -- or excuse

3   me -- inaccuracies contained in a consumer report.

4           So if there is a case out there that says the

5   congressional intent was to allow the consumer to discuss

6   accurate information, I am unaware of what that is.

7           With respect to that, given that Mr. Walker's

8   claim -- he doesn't claim that any of the information in the

9   consumer report was inaccurate, he just claims that Fred Meyer

10  should have discussed his accurate information with him

11  directly, we don't think that states a claim.

12          Building on the congressional intent that does exist

13  in the case law, Your Honor, we believe that a practical -- it's

14  a practical reality that GIS is exactly who is entitled to

15  administer the dispute process.  Fred Meyer contracts with them.

16  GIS is the one who -- they compile the report.  They have the

17  ability to double check the report, to make sure it's accurate.

18          So in light of the fact that Congress wanted to

19  correct inaccurate -- identify inaccurate information and give

20  consumers the opportunity to rectify that inaccurate

21  information, Fred Meyer can't do that, GIS can.  So asking them

22  to go through the process is completely in keeping with the

23  congressional intent, with the case law, and with FTC opinions

24  that are out there.

25          Now, I would say -- the caveat to that, that is not

1    the same thing as Fred Meyer giving away decisionmaking

2    authority and to review the findings of GIS, the entity that can

3    make those changes.

4          THE COURT:  So you're saying that notwithstanding this

5    information or this language in subsection (3)(a) which says

6    before taking any adverse action that Fred Meyer can delegate

7    the review of this information or the -- or any corrections or

8    clarifications regarding this information to GIS, but that

9    doesn't divest Fred Meyer of the ability to take any adverse

10   action.

11         I'm not sure if that really made much sense.

12         MR. MATTINGLY:  Your Honor, to the -- sorry.

13         THE COURT:  Go ahead.

14         MR. MATTINGLY:  Well, I was going to say, Your Honor,

15   to the extent that GIS is hired to administer a process, to

16   administer the opportunity to otherwise respond, which is

17   authorized under the law.  No final binding decisions are made

18   until that process has been completed.

19         And, in fact, if we look at the facts on the face of

20   the complaint, Mr. Walker received a pre-adverse action notice

21   in, as opposing counsel said, five days, five business days,

22   generally the recognized waiting period.  Mr. Walker did not

23   avail himself of the opportunity.  Even if he thinks he had a

24   legal right to discuss his accurate information with GIS -- or

25   with Fred Meyer, he didn't dispute within the reasonable time

1   frame.  So there is no injury because he didn't dispute.

2              THE COURT:  I understand that argument.

3              So in sum what you're saying is that Fred Meyer has

4   delegated this particular responsibility to GIS, but it hasn't

5   delegated its decisionmaking as to whether or not to ultimately

6   take an adverse action against the employee, so it's not then

7   violating the terms of the statute or the language of the

8   statute.

9              Is that somewhat accurate?

10             MR. MATTINGLY:  That is absolutely correct,

11  Your Honor.

12             THE COURT:  Okay.  So I know it's the defendant's

13  motion.  But let me ask if there's anything else, Mr. Mattingly,

14  you would like to say with respect to this issue.

15             MR. MATTINGLY:  Your Honor, I think the -- our

16  arguments and the briefs and this discussion today speak for

17  themselves.  So with that, thank you for the opportunity.

18             THE COURT:  And then, Mr. Woodrow, Mr. Mattingly made

19  some arguments that I'd like to give you the opportunity to

20  respond if you would like.

21             Is there anything you would like to say in response to

22  what he has just argued?

23             MR. WOODROW:  Yes.  Thank you, Judge.

24             Steven Woodrow.

25             Fred Meyer seizes upon three words in the FTC guidance

1   where it instructs employers that the purpose of the pre-adverse

2   action notice requirement is to facilitate a discussion.  Fred

3   Meyer seizes upon the three words "or otherwise respond."

4         Judge, read in context, those three words are not

5   supposed to be exclusive avenues of each other where an employer

6   can either discuss issues with the employee one on one or they

7   can refer to a third party.  It's not supposed to be one or the

8   other.  It's supposed to facilitate a discussion between the

9   applicant and employee with the employer, but does not limit the

10  applicant or employee from also trying to fix any inaccurate or

11  misleading information in the consumer report.

12        So we would ask the Court to not read or otherwise

13  respond in the way that Fred Meyer urges.

14        We also have the fact, Judge, that GIS disclaims any

15  involvement in the hiring decision process.  So complaining to

16  GIS and lodging disputes with GIS or trying to explain accurate

17  but misleading information to GIS is -- I hesitate to use the

18  word "fool's errand," but it does seem a bit of makework on

19  behalf of applicants and employees.  GIS has no ability,

20  according to its own notices, to make the hiring decision.

21        We also have no facts of record showing that Fred

22  Meyer only delegates the limited amount of responsibility to

23  GIS.  What it seems happens is that Fred Meyer provides a list

24  of system criteria to GIS and then GIS produces notices based on

25  that system criteria and that there's actually very little, if

1    any, communication between GIS and Fred Meyer once those

2    criteria are met.

3         So if an application like Daniel Walker's comes back

4    with a flag on it, it's our belief that Fred Meyer has very

5    limited involvement after that point.  It's basically instructed

6    GIS what to do when these types of flags are raised and

7    therefore we don't need to be involved in the process anymore.

8         So while Counsel might ultimately be correct and our

9    hunches might be wrong, Judge, we don't have any facts of record

10   to show that now.  We need discovery on that issue.

11        It does look like Fred Meyer shoves this off onto GIS

12   and directs any disputes to GIS, but then, you know, in a game

13   of sort of cat and mouse, then when the decision comes down

14   says, oh, GIS had nothing to do with it.

15        So, Judge, we would urge the Court to look past that.

16        THE COURT:  Can you clarify, Counsel, the language of

17   the statute as you know says before taking any adverse action

18   based in whole or in part on the report, the person intending to

19   take such adverse action shall provide to the consumer a copy of

20   the report.

21        Can you tell me where in the statute or how it is that

22   you arrive at the conclusion that this statute provides people

23   such as your client the right to discuss the adverse action with

24   the employer.

25        MR. WOODROW:  Yes, Judge.

```
 1              That's set forth most fully and completely in our
 2    briefing.  We cite -- I believe it's two or three FTC decisions
 3    repeating over and over again that employers should get with
 4    their lawyers and craft reasonable language in light of the
 5    purpose of the statute and of the standalone notice requirement.
 6              And they say that over and over again, that the
 7    purpose of the requirement -- I'll quote it for you,
 8    Your Honor -- it's in the Lewis advisory opinion and others.
 9    "Employers may wish to consult with their counsel in order to
10    develop procedures that are appropriate keeping in mind the
11    purpose of the provisions to allow" --
12              THE COURT:  Sorry, Counsel.  When you're reading, be
13    sure to slow down.
14              MR. WOODROW:  Certainly, Judge.
15              This is in advisory opinion to Coffey, and in advisory
16    opinion to Lewis, and what they say is, "Employers may wish to
17    consult with their counsel in order to develop procedures that
18    are appropriate keeping in mind the purpose of the provision is
19    to allow consumers to discuss the report with employers before
20    adverse action is taken."
21              And that's back from 1998, Your Honor, in June.  So
22    we're coming up on its 20th anniversary.
23              And the reason I believe, Judge, that these issues
24    rarely come up is because most employers do a good job of
25    following the FTC guidance and don't force employees and
```

1    applicants to go to some third party that later disclaims any

2    responsibility in the hiring decision.

3          THE COURT:  Okay.  I think I understand.

4          Let me just finally go to Mr. Mattingly just to give

5    you an opportunity to address that last issue if you would like.

6          MR. MATTINGLY:  Yes, Your Honor.

7          Again, I would point out that there are multiple FTC

8    opinions, there are opinions that say -- discussions such as the

9    one Mr. Woodrow just mentioned that state what he stated, what

10   he read.

11         As I've already stated, there are also other FTC

12   opinions that include a statement or otherwise respond clearly

13   since it's an "or," not an "and," it's not one or the other.

14         And I'm trying to -- let me look at my notes real

15   quick, Your Honor.

16         The only other thing that I want to bring up without

17   bringing up a whole other issue is, again, I would just point

18   out that the -- to the extent that these opinions have been out

19   there for 19 years, they are not authoritative.  Some courts,

20   not the Ninth Circuit, have found them to be persuasive.  The

21   Ninth Circuit in *Syed* did not find them to be persuasive even

22   when they were dealing with an issue where the FTC opinions were

23   relevant to the issue at hand.  In that case it was a liability

24   waiver case, whether liability waiver was extraneous

25   information.  There are FTC opinions directly on that issue and

1    the Ninth Circuit specifically declined to rely on those.

2            So to the extent that this entire case of Mr. Walker's

3    is built on FTC opinions, the statute doesn't contain any of

4    this, and so we're left with the Ninth Circuit saying that FTC

5    opinions are -- essentially they're going to decline to rely on

6    them.

7            So I would just point that out and -- with respect to

8    the value of the FTC opinions.

9            THE COURT:  Okay.  All right.  So let me thank you all

10   for your helpful arguments today and also for the excellent

11   briefing.  I'm going to take it under advisement as of today.

12   I'll take a closer look, of course, at your briefing and also

13   the cases that you've cited.

14           So with that, I think that we're going to conclude our

15   proceedings for today.

16           Thanks so much.

17

18           (The proceedings concluded at 10:12 a.m.)

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3            I certify, by signing below, that the foregoing is a

4    true and correct transcript of the record, taken by stenographic

5    means, of the proceedings in the above-titled cause.   A

6    transcript without an original signature, conformed signature,

7    or digitally signed signature is not certified.

8

9            DATED this 27th day of August, 2018.

10

11

12                                  _____
                                    RYAN WHITE
13                                  Registered Merit Reporter
                                    Certified Realtime Reporter
14                                  Expires 9/30/2019
                                    Washington CCR No. 3220
15                                  Expires 10/25/2018
                                    Oregon CSR No. 10-0419
16                                  Expires 12/31/2020

17

18

19

20

21

22

23

24

25

## 1

**10-0419** [1] - 29:15
**10/25/2018** [1] - 29:15
**1000** [1] - 1:24
**1001** [1] - 2:8
**10:12** [1] - 28:18
**111** [1] - 2:16
**12/31/2020** [1] - 29:16
**13** [1] - 4:17
**1415** [1] - 2:8
**15** [1] - 4:19
**1681b(B)(2)(A** [1] - 15:10
**1681b(B)(2)(A)(i** [2] - 7:3, 12:23
**1681b(B)(2)(A)(ii)** [1] - 12:14
**1681g** [1] - 12:25
**17** [1] - 4:23
**17-cv-1791** [1] - 3:6
**18** [1] - 4:24
**19** [3] - 18:18, 19:20, 27:19
**1900** [1] - 2:12
**1998** [1] - 26:21

**2** [3] - 8:12, 9:13, 10:22
**2)(A** [1] - 8:10
**20** [2] - 8:3, 17:10
**2017** [1] - 13:7
**2018** [3] - 1:8, 3:1, 29:9
**20th** [1] - 26:22
**213-0675** [1] - 2:5
**224-5858** [1] - 2:17
**255** [1] - 2:12
**27** [2] - 1:8, 3:1
**27th** [1] - 29:9

## 3

**3)(a** [1] - 22:5
**3/21/17** [1] - 6:18
**300** [1] - 2:4
**301** [1] - 1:24
**3220** [1] - 29:14
**326-8184** [1] - 1:25
**3400** [1] - 2:16
**379-9933** [1] - 2:9
**3900** [1] - 2:4
**3:17-cv-01791-YY** [1] - 1:7
**3rd** [1] - 1:24

## 4

**45202** [1] - 2:13

## 5

**503** [3] - 1:25, 2:9,

**2:17**
**513** [1] - 2:13
**5th** [3] - 2:8, 2:12, 2:16

## 7

**720** [1] - 2:5

## 8

**80210** [1] - 2:5

## 9

**9** [1] - 16:15
**9/30/2019** [1] - 29:14
**97204** [3] - 1:24, 2:8, 2:16
**977-8491** [1] - 2:13
**9:32** [1] - 3:1

## A

**a.m** [2] - 3:1, 28:18
**ability** [2] - 21:17, 22:9, 24:19
**above-titled** [1] - 29:5
**absolutely** [3] - 12:9, 13:8, 23:10
**accompany** [1] - 7:12
**according** [1] - 4:20
**accurate** [13] - 4:1, 17:23, 18:13, 19:23, 19:24, 20:7, 20:13, 21:6, 21:10, 21:17, 22:24, 23:9, 24:16
**acknowledged** [1] - 15:9
**acknowledgements** [1] - 4:21
**acknowledging** [1] - 8:7
**acknowledgment** [2] - 7:7, 15:21
**action** [19] - 12:14, 17:1, 17:7, 17:12, 17:16, 18:16, 19:1, 19:13, 20:5, 20:8, 22:6, 22:10, 22:20, 23:6, 24:2, 25:17, 25:19, 25:23, 26:20
**actual** [1] - 14:25
**add** [1] - 10:10
**adding** [1] - 11:13
**addition** [1] - 4:7
**additional** [1] - 10:2
**additionally** [1] - 6:5
**address** [2] - 21:2, 27:5
**addressed** [2] - 12:12, 20:12
**addressing** [1] - 12:15
**adds** [1] - 10:10
**administer** [3] - 21:15, 22:15, 22:16

**adopting** [1] - 20:15
**adopts** [1] - 15:5
**adverse** [18] - 17:1, 17:7, 17:12, 17:16, 18:16, 19:1, 19:13, 20:5, 20:8, 22:6, 22:9, 22:20, 23:6, 24:1, 25:17, 25:19, 25:23, 26:20
**advisement** [1] - 28:11
**advisory** [4] - 17:9, 26:8, 26:15
**afford** [1] - 18:17
**agencies** [1] - 20:18
**agency** [2] - 9:1, 9:2
**agree** [2] - 6:17, 12:17
**ahead** [1] - 22:13
**allegation** [1] - 12:13
**allegations** [2] - 10:10, 16:5
**allege** [3] - 7:21, 8:3, 16:7
**alleged** [1] - 6:2
**allow** [7] - 7:15, 17:21, 18:11, 19:2, 21:5, 26:11, 26:19
**allowance** [1] - 7:22
**allowed** [1] - 11:22
**allowing** [2] - 9:6, 20:3
**allows** [2] - 16:15, 17:4
**alone** [2] - 7:20, 10:12
**altogether** [1] - 10:25
**amount** [2] - 20:17, 24:22
**anniversary** [1] - 26:22
**apologies** [1] - 5:16
**apologize** [1] - 20:23
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:8
**applicant** [7] - 17:13, 17:17, 19:2, 19:6, 19:7, 24:9, 24:10
**applicants** [7] - 7:23, 10:14, 17:21, 18:12, 18:17, 24:19, 27:1
**application** [6] - 4:15, 4:19, 5:11, 5:21, 5:25, 25:3
**applied** [2] - 4:18, 5:20
**approach** [1] - 7:5
**appropriate** [3] - 14:1, 26:10, 26:18
**arguably** [1] - 6:2
**argue** [1] - 13:16
**argued** [1] - 23:22
**argument** [5] - 6:25, 10:25, 23:2
**Argument** [1] - 1:15
**arguments** [5] - 13:21, 16:23, 23:16, 23:19,

**28:10**
**arrive** [1] - 25:22
**ascertain** [1] - 5:5
**associated** [1] - 15:7
**assuming** [1] - 19:23
**AT** [1] - 2:6
**attempt** [2] - 3:25, 6:4
**ATTORNEY** [1] - 2:6
**August** [1] - 29:9
**authoritative** [1] - 27:19
**authorities** [1] - 8:20
**authority** [4] - 8:16, 9:1, 17:7, 22:2
**authorization** [18] - 7:7, 7:15, 7:17, 7:22, 7:24, 8:15, 8:16, 8:19, 8:24, 9:4, 9:5, 9:13, 9:14, 10:5, 10:12, 10:24, 12:18
**authorize** [2] - 8:12, 8:25
**authorized** [4] - 12:25, 13:13, 14:8, 22:17
**authorizes** [1] - 7:15
**authorizing** [3] - 7:23, 8:5, 9:10
**avail** [1] - 22:23
**Avenue** [4] - 1:24, 2:4, 2:8, 2:16
**avenues** [2] - 19:21, 24:5
**aware** [2] - 20:10, 20:11

## B

**background** [1] - 4:22
**based** [6] - 5:5, 13:5, 15:16, 16:19, 24:24, 25:18
**basic** [2] - 13:10, 19:10
**basis** [1] - 17:9
**BEFORE** [1] - 1:17
**beginning** [1] - 4:20
**behalf** [3] - 1:5, 14:24, 24:19
**belief** [1] - 25:4
**below** [1] - 29:3
**best** [1] - 3:25
**better** [2] - 4:12, 7:1
**between** [2] - 24:8, 25:1
**binding** [2] - 17:10, 22:17
**bit** [4] - 18:2, 18:4, 24:18
**blanche** [1] - 9:1
**blessing** [1] - 9:2
**bottom** [1] - 10:18
**brief** [1] - 13:25
**briefing** [4] - 13:21,

**26:2, 28:11, 28:12
briefs** [1] - 23:16
**bring** [1] - 27:16
**bringing** [2] - 7:12, 27:17
**building** [1] - 21:12
**built** [1] - 28:3
**burden** [4] - 14:25, 16:17, 17:11, 19:23
**business** [4] - 18:23, 18:25, 19:2, 22:21

## C

**careless** [1] - 15:7
**carte** [1] - 9:1
**case** [21] - 3:6, 3:7, 4:11, 4:14, 6:9, 6:10, 10:8, 10:20, 14:16, 15:4, 15:16, 19:25, 20:1, 20:11, 21:4, 21:13, 21:23, 27:23, 27:24, 28:2
**cases** [2] - 14:10, 28:13
**cat** [1] - 25:13
**caveat** [1] - 21:25
**CCR** [1] - 29:14
**certainly** [4] - 11:14, 17:5, 18:9, 26:14
**certified** [1] - 29:7
**Certified** [1] - 29:13
**certify** [1] - 29:3
**cetera** [1] - 11:20
**change** [1] - 10:8
**changes** [1] - 22:3
**check** [1] - 21:17
**Cincinnati** [1] - 2:13
**Circuit** [6] - 15:4, 20:11, 27:20, 27:21, 28:1, 28:4
**cite** [1] - 26:2
**cited** [5] - 13:1, 14:10, 18:22, 19:9, 28:13
**claim** [8] - 4:5, 12:17, 12:20, 13:23, 16:25, 21:8, 21:11
**claims** [1] - 21:9
**clarification** [1] - 6:22
**clarifications** [1] - 22:8
**clarify** [4] - 6:3, 6:4, 6:8, 25:16
**class** [1] - 14:24
**clear** [6] - 5:9, 7:8, 7:20, 8:5, 10:22, 12:19
**clearly** [7] - 4:2, 9:9, 10:16, 15:13, 15:17, 19:25, 27:12
**CLERK** [3] - 5:12, 5:14, 5:18
**client** [1] - 25:23
**closer** [1] - 28:12

**Coffey** [1] - 26:15
**coincides** [1] - 6:19
**color** [1] - 10:11
**Colorado** [1] - 2:5
**combination** [4] - 12:22, 12:24, 12:25, 16:20
**combined** [2] - 13:3, 16:7
**combines** [2] - 7:9, 7:25
**coming** [1] - 26:22
**comment** [1] - 12:7
**common** [1] - 18:22
**communication** [1] - 25:1
**company** [1] - 4:21
**compile** [1] - 21:16
**complaining** [1] - 24:15
**complaint** [9] - 4:14, 4:16, 5:5, 5:6, 6:3, 10:11, 12:12, 16:6, 22:20
**complete** [1] - 4:20
**completed** [1] - 22:18
**completely** [2] - 21:22, 26:1
**comply** [2] - 9:20, 9:23
**comport** [1] - 10:15
**compounds** [1] - 10:9
**conclude** [1] - 28:14
**concluded** [2] - 9:19, 28:18
**conclusion** [1] - 25:22
**confirmatory** [1] - 5:20
**conformed** [1] - 29:6
**confused** [2] - 8:3, 8:4
**confusing** [4] - 10:13, 10:25, 11:21, 16:8
**confusion** [1] - 10:10
**Congress** [4] - 20:14, 20:16, 21:1, 21:18
**congressional** [5] - 20:10, 20:12, 21:5, 21:12, 21:23
**considered** [2] - 12:16, 19:12
**conspicuous** [2] - 10:22, 12:19
**conspicuously** [2] - 9:9, 10:16
**consult** [2] - 26:9, 26:17
**consumer** [39] - 7:10, 7:11, 7:16, 8:1, 8:6, 8:12, 8:25, 9:1, 9:2, 9:10, 10:17, 11:18, 11:19, 11:21, 11:23, 12:1, 12:22, 12:24, 13:4, 13:10, 13:11, 14:7, 14:16, 15:19,

16:7, 16:8, 19:9, 19:22, 20:4, 20:18, 21:3, 21:5, 21:9, 24:11, 25:19
**consumers** [5] - 8:4, 20:6, 20:19, 21:20, 26:19
**contain** [6] - 7:14, 8:21, 8:22, 10:22, 12:13, 28:3
**contained** [4] - 10:2, 10:3, 11:15, 21:3
**contains** [1] - 7:19
**context** [2] - 5:3, 24:4
**continue** [1] - 18:8
**contracted** [1] - 20:4
**contracts** [1] - 21:15
**copy** [1] - 25:19
**corporation** [1] - 1:9
**correct** [6] - 9:15, 9:16, 21:19, 23:10, 25:8, 29:4
**corrected** [1] - 20:19
**corrections** [1] - 22:7
**correctly** [1] - 18:6
**counsel** [10] - 3:8, 3:9, 3:14, 3:21, 5:7, 12:7, 19:19, 22:21, 26:9, 26:17
**Counsel** [4] - 17:25, 25:8, 25:16, 26:12
**counting** [1] - 18:18
**counts** [1] - 10:19
**course** [2] - 4:10, 28:12
**COURT** [33] - 1:1, 1:18, 3:5, 3:14, 3:22, 5:13, 6:1, 6:21, 8:9, 9:12, 9:18, 10:1, 10:5, 10:21, 11:10, 12:2, 12:5, 13:15, 15:24, 16:24, 17:25, 18:11, 19:15, 20:21, 22:4, 22:13, 23:2, 23:12, 23:18, 25:16, 26:12, 27:3, 28:9
**court** [5] - 3:24, 5:14, 15:9, 18:5, 18:10
**Court** [9] - 1:23, 10:18, 15:5, 15:15, 16:10, 20:12, 20:25, 24:12, 25:15
**Court's** [1] - 10:7
**Courthouse** [1] - 1:23
**courts** [3] - 14:9, 19:9, 27:19
**crackling** [1] - 18:5
**craft** [1] - 26:4
**criminal** [1] - 4:22
**criteria** [3] - 24:24, 24:25, 25:2
**crossed** [1] - 7:2
**CRR** [1] - 1:23

**CSR** [1] - 29:15
**CSR/CCR** [1] - 1:23
**curb** [1] - 20:15

# D

**damages** [2] - 14:24, 14:25
**Daniel** [1] - 25:3
**DANIEL** [1] - 1:5
**date** [1] - 6:19
**DATED** [1] - 29:9
**days** [4] - 18:23, 18:25, 22:21
**dealing** [1] - 27:22
**decide** [2] - 16:10, 16:19
**decided** [1] - 9:3
**decision** [5] - 14:23, 24:15, 24:20, 25:13, 27:2
**decisionmaking** [2] - 22:1, 23:5
**decisions** [3] - 19:20, 22:17, 26:2
**decline** [2] - 16:10, 28:5
**declined** [1] - 28:1
**decrease** [1] - 20:16
**defeat** [1] - 16:13
**defeats** [2] - 8:2, 9:8
**Defendant** [2] - 1:10, 2:10
**defendant** [5] - 3:17, 3:19, 3:21, 7:16, 13:18
**defendant's** [2] - 4:4, 23:12
**defense** [3] - 3:15, 6:14, 12:6
**Delaware** [1] - 1:9
**delegate** [1] - 22:6
**delegated** [2] - 23:4, 23:5
**delegates** [2] - 17:7, 24:22
**Denver** [1] - 2:5
**describe** [1] - 15:19
**describes** [1] - 14:18
**designed** [1] - 20:16
**determines** [1] - 15:15
**develop** [2] - 26:10, 26:17
**different** [1] - 11:6
**difficulties** [1] - 20:19
**difficulty** [1] - 18:3
**digital** [1] - 6:7
**digitally** [1] - 29:7
**DINSMORE** [1] - 2:10
**direct** [1] - 20:1
**directly** [2] - 21:11, 27:25
**directs** [2] - 19:4,

25:12
**disclaims** [2] - 24:14, 27:1
**disclosure** [20] - 5:2, 6:5, 7:8, 7:21, 7:25, 8:15, 8:16, 8:18, 8:21, 8:23, 9:17, 9:20, 10:12, 11:22, 13:4, 13:9, 13:17, 15:14, 16:11, 16:13
**disclosures** [10] - 4:9, 4:21, 4:22, 5:23, 5:24, 6:11, 7:11, 12:4, 12:23, 13:3
**discovery** [3] - 5:9, 5:20, 25:10
**discuss** [9] - 17:14, 19:3, 19:23, 20:7, 21:5, 22:24, 24:6, 25:23, 26:19
**discussed** [2] - 20:13, 21:10
**discussion** [6] - 13:6, 20:1, 20:3, 23:16, 24:2, 24:8
**discussions** [1] - 27:8
**dismiss** [2] - 4:4, 5:4
**dispute** [7] - 17:22, 18:12, 20:5, 20:7, 21:15, 22:25, 23:1
**disputes** [2] - 19:4, 24:16, 25:12
**dissemination** [1] - 20:15
**distracts** [1] - 7:10
**district** [1] - 14:9
**DISTRICT** [3] - 1:1, 1:2, 1:18
**District** [1] - 1:23
**divest** [1] - 22:9
**DIVISION** [1] - 1:3
**document** [7] - 7:1, 7:23, 8:7, 8:11, 8:17, 8:19, 12:19
**documents** [5] - 4:24, 5:22, 6:12, 7:19, 10:13
**done** [1] - 16:22
**double** [1] - 21:17
**down** [5] - 11:1, 18:6, 20:21, 25:13, 26:13
**DUNN** [1] - 2:14
**during** [1] - 6:19

# E

**EEO** [1] - 14:12
**either** [3] - 13:10, 14:16, 24:6
**employee** [9] - 17:13, 17:17, 19:6, 19:7, 21:1, 23:6, 24:6, 24:9, 24:10
**employees** [6] - 10:14,

17:21, 18:11, 18:17, 24:19, 26:25
**employer** [9] - 15:5, 17:14, 17:15, 19:3, 19:22, 24:5, 24:9, 25:24
**employers** [8] - 17:6, 17:11, 18:21, 24:1, 26:3, 26:9, 26:19, 26:24
**Employers** [1] - 26:16
**employment** [1] - 4:20
**ensure** [1] - 21:1
**entire** [2] - 19:12, 28:2
**entitled** [1] - 21:14
**entity** [1] - 22:2
**entries** [2] - 17:23, 18:13
**errand** [1] - 24:18
**error** [1] - 15:6
**errors** [1] - 20:19
**essentially** [2] - 11:11, 28:5
**et** [1] - 11:20
**event** [1] - 11:2
**evidence** [1] - 16:19
**exactly** [1] - 21:14
**example** [1] - 9:21
**excellent** [1] - 28:10
**exclusive** [1] - 24:5
**Excuse** [1] - 5:12
**excuse** [1] - 21:2
**executed** [1] - 6:18
**Exhibit** [10] - 5:2, 6:7, 6:17, 6:24, 9:20, 9:21, 10:3, 10:19, 10:24, 13:9
**exhibits** [2] - 4:6, 4:7
**exist** [1] - 21:12
**existing** [2] - 15:16, 20:13
**expands** [1] - 11:16
**Expires** [3] - 29:14, 29:15, 29:16
**explain** [7] - 4:13, 6:24, 11:5, 17:3, 17:22, 18:13, 24:16
**explained** [1] - 5:1
**express** [1] - 18:20
**expressly** [2] - 16:7, 18:20
**extent** [5] - 12:16, 19:18, 22:15, 27:18, 28:2
**extra** [3] - 7:25, 8:22
**extraneous** [12] - 7:9, 7:13, 7:18, 13:13, 14:6, 14:9, 14:11, 15:15, 16:11, 16:12, 16:21, 27:24

# F

**face** [3] - 14:4, 20:19,

22:19
**facilitate** [2] - 24:2, 24:8
**fact** [9] - 10:9, 13:1, 16:9, 16:14, 16:19, 20:14, 21:18, 22:19, 24:14
**facts** [4] - 6:2, 22:19, 24:21, 25:9
**factual** [1] - 5:10
**failure** [2] - 4:5, 19:11
**FAITH** [1] - 2:10
**Faith** [1] - 3:17
**faith.whittaker@ dinsmore.com** [1] - 2:11
**false** [1] - 20:15
**far** [2] - 4:11, 9:24
**favorable** [1] - 16:6
**FCRA** [3] - 10:20, 14:17, 15:19
**February** [1] - 1:8, 3:1
**federal** [2] - 16:15, 16:17
**fifth** [1] - 19:1
**fill** [1] - 4:13
**final** [3] - 19:1, 19:7, 22:17
**finally** [1] - 27:4
**finder** [1] - 16:19
**findings** [1] - 22:2
**first** [4] - 11:6, 11:12, 11:16, 12:11
**five** [4] - 18:22, 18:25, 22:21
**fix** [1] - 24:10
**flag** [1] - 25:4
**flags** [1] - 25:6
**folks** [1] - 7:12
**follow** [2] - 18:24, 19:11
**followed** [1] - 7:8
**following** [2] - 9:24, 26:25
**fool's** [1] - 24:18
**FOR** [1] - 1:2
**force** [1] - 26:25
**foregoing** [1] - 29:3
**foremost** [1] - 12:11
**form** [2] - 14:4, 14:21
**forms** [1] - 20:6
**forth** [1] - 26:1
**frame** [1] - 23:1
**Fred** [26] - 3:7, 4:18, 5:21, 14:17, 15:13, 16:5, 16:16, 16:20, 20:4, 21:9, 21:15, 21:21, 22:1, 22:6, 22:9, 22:25, 23:3, 23:25, 24:2, 24:13, 24:21, 24:23, 25:1, 25:4, 25:11
**FRED** [1] - 1:9

## G

**game** [1] - 25:12
**gaps** [1] - 4:13
**gather** [1] - 9:3, 9:7
**generally** [5] - 11:12, 13:16, 16:15, 16:16, 22:22
**GIS** [27] - 9:6, 11:9, 18:24, 19:5, 19:6, 20:5, 21:14, 21:16, 21:21, 22:2, 22:8, 22:15, 22:24, 23:4, 24:14, 24:16, 24:17, 24:19, 24:23, 24:24, 25:1, 25:6, 25:11, 25:12, 25:14
**given** [2] - 15:18, 21:7
**global** [1] - 3:21
**GRAHAM** [1] - 2:14
**great** [1] - 6:21
**greater** [1] - 15:6
**guess** [2] - 4:25, 5:4
**guidance** [7] - 17:8, 18:25, 19:11, 19:18, 23:25, 26:25

## H

**half** [1] - 10:18
**hand** [1] - 27:23
**harm** [1] - 11:13
**hearing** [2] - 18:3, 18:4
**heightened** [1] - 14:25
**held** [2] - 17:11, 17:19
**help** [1] - 4:12
**helpful** [1] - 28:10
**hesitate** [1] - 24:17
**higher** [1] - 15:2
**highlight** [1] - 13:19, 13:22, 16:1
**highly** [2] - 19:12, 19:18
**himself** [1] - 22:23
**hired** [1] - 22:15
**hiring** [3] - 24:15, 24:20, 27:2
**history** [1] - 4:22
**Honor** [32] - 3:12, 3:16, 3:18, 3:20, 5:12, 5:17, 6:16, 7:20, 10:4, 12:9, 12:11, 13:24, 14:3,

14:14, 14:22, 15:13, 15:22, 16:22, 18:19, 19:17, 20:9, 20:24, 21:13, 22:12, 22:14, 23:11, 23:15, 26:8, 26:21, 27:6, 27:15
**HONORABLE** [1] - 1:17
**hoping** [1] - 4:12
**hunches** [1] - 25:9
**hypothetically** [1] - 9:19

## I

**identify** [2] - 4:3, 21:19
**imagine** [1] - 15:10
**impermissible** [1] - 14:10
**important** [1] - 20:9
**importantly** [1] - 14:20
**IN** [1] - 1:1
**in-person** [2] - 5:25, 6:19
**inaccuracies** [2] - 19:8, 21:3
**inaccurate** [10] - 17:22, 18:12, 19:4, 20:7, 20:17, 21:9, 21:19, 21:20, 24:10
**inaccurately** [1] - 21:2
**inappropriate** [1] - 13:12
**INC** [1] - 1:9
**include** [3] - 14:8, 20:3, 27:12
**included** [5] - 9:16, 11:18, 14:5, 14:11, 14:14
**includes** [1] - 14:5
**including** [2] - 4:21, 9:22
**inclusion** [1] - 16:20
**individually** [1] - 1:5
**inferred** [1] - 6:2
**info** [1] - 7:13
**inform** [3] - 15:18, 19:2, 20:6
**information** [46] - 5:5, 7:9, 7:11, 7:13, 7:18, 7:25, 8:1, 8:2, 8:22, 9:3, 9:7, 10:2, 11:15, 11:17, 12:20, 12:23, 12:24, 13:13, 14:5, 14:9, 14:17, 15:15, 16:11, 16:21, 17:22, 18:12, 19:4, 19:24, 19:25, 20:7, 20:13, 20:15, 20:17, 21:6, 21:8, 21:10, 21:19, 21:21, 22:5, 22:7, 22:8, 22:24, 24:11, 24:17, 27:25
**informed** [1] - 19:8

**informs** [2] - 14:16, 19:6
**injury** [1] - 23:1
**instruct** [1] - 8:20
**instructed** [1] - 25:5
**instructs** [1] - 24:1
**intended** [1] - 21:1
**intending** [1] - 25:18
**intent** [7] - 9:8, 16:16, 20:10, 20:12, 21:5, 21:12, 21:23
**internal** [1] - 14:12
**interpret** [1] - 17:8
**interpretations** [1] - 15:10
**interrupt** [1] - 18:7
**interview** [2] - 6:19, 6:20
**interviews** [1] - 7:12
**investigate** [1] - 11:9
**investigation** [1] - 11:25
**investigative** [10] - 7:9, 8:1, 8:6, 11:19, 11:25, 12:24, 13:3, 13:11, 14:7, 16:8
**invitation** [1] - 16:10
**involved** [1] - 25:7
**involvement** [2] - 24:15, 25:5
**irrelevant** [1] - 12:21
**issue** [11] - 5:2, 13:17, 16:9, 16:14, 23:14, 25:10, 27:5, 27:17, 27:22, 27:23, 27:25
**issues** [4] - 5:10, 6:24, 24:6, 26:23
**items** [1] - 17:14
**itself** [3] - 7:25, 14:4, 14:21

## J

**job** [2] - 4:18, 26:24
**JUDGE** [1] - 1:18
**Judge** [26] - 3:5, 3:10, 5:8, 5:19, 7:4, 8:18, 10:6, 11:14, 12:3, 16:3, 16:5, 16:14, 16:23, 17:5, 17:11, 18:9, 18:15, 19:10, 23:23, 24:4, 24:14, 25:9, 25:15, 25:25, 26:14, 26:23
**June** [1] - 26:21
**jurisdiction** [1] - 4:5

## K

**keep** [1] - 13:25
**keeping** [3] - 21:22, 26:10, 26:18
**knowing** [1] - 15:21
**knowledge** [1] - 16:15

## L

**lack** [2] - 4:5, 7:1
**language** [6] - 10:23, 22:5, 23:7, 25:16, 26:4
**last** [9] - 6:25, 7:6, 9:22, 9:23, 11:3, 11:4, 11:6, 11:12, 27:5
**LAW** [1] - 2:6
**law** [10] - 13:14, 14:6, 14:8, 14:11, 15:16, 16:11, 16:12, 21:13, 21:23, 22:17
**lawyers** [1] - 26:4
**left** [2] - 18:10, 28:4
**leg** [1] - 14:20, 22:24
**letter** [2] - 15:11, 15:17
**level** [2] - 14:25, 15:2
**Lewis** [2] - 26:8, 26:16
**liability** [3] - 14:13, 27:23, 27:24
**light** [5] - 13:6, 16:6, 20:9, 21:18, 26:4
**limit** [1] - 24:9
**limited** [4] - 13:8, 17:9, 24:22, 25:5
**limiting** [1] - 7:6
**line** [2] - 3:24, 7:2
**list** [1] - 24:23
**LLC** [2] - 2:3, 2:6
**LLP** [2] - 2:10, 2:14
**loaded** [1] - 9:6
**loading** [1] - 7:24
**lodging** [1] - 24:16
**look** [7] - 10:13, 11:4, 22:19, 25:11, 25:15, 27:14, 28:12
**looked** [1] - 9:21
**looking** [3] - 6:24, 8:9, 11:10
**looks** [1] - 18:24
**losing** [1] - 8:23

## M

**MAGISTRATE** [1] - 1:18
**makework** [1] - 24:18
**matter** [6] - 10:1, 10:2, 13:13, 14:5, 16:10, 16:12
**matters** [1] - 19:3
**Mattingly** [9] - 3:18, 6:16, 12:10, 13:25, 19:16, 20:21, 23:13, 23:18, 27:4
**MATTINGLY** [12] - 2:11, 3:18, 6:16, 12:9, 13:24, 19:17, 20:23, 22:12, 22:14, 23:10, 23:15, 27:6
**means** [2] - 17:9, 29:5

4

**meet** [1] - 19:22
**mentioned** [2] - 11:4, 27:9
**merely** [1] - 15:7
**Merit** [1] - 29:13
**met** [1] - 25:2
**methods** [1] - 9:2
**Mexico** [1] - 2:4
**MEYER** [1] - 1:9
**Meyer** [22] - 3:7, 4:18, 5:22, 16:5, 16:16, 20:4, 21:9, 21:15, 21:21, 22:1, 22:6, 22:9, 22:25, 23:3, 23:25, 24:3, 24:13, 24:22, 24:23, 25:1, 25:4, 25:11
**Meyer's** [4] - 4:18, 14:17, 15:13, 16:20
**MICHAEL** [1] - 2:11
**michael.mattingly@ dinsmore.com** [1] - 2:12
**might** [4] - 17:23, 18:13, 25:8, 25:9
**Mike** [4] - 3:18, 6:16, 12:9, 13:24
**MILLER** [1] - 2:14
**mind** [2] - 26:10, 26:18
**misleading** [2] - 24:11, 24:17
**missed** [1] - 5:1
**moment** [1] - 18:1
**morning** [6] - 3:5, 3:10, 3:12, 3:16, 3:20, 3:22
**most** [5] - 14:19, 16:6, 18:22, 26:1, 26:24
**motion** [7] - 4:4, 4:6, 5:4, 6:17, 13:19, 23:13
**mouse** [1] - 25:13
**move** [4] - 4:24, 15:25, 16:25
**moving** [1] - 6:23
**MR** [33] - 3:10, 3:12, 3:18, 3:20, 5:8, 5:16, 5:19, 6:16, 7:4, 8:18, 9:16, 9:25, 10:4, 10:6, 11:8, 11:14, 12:3, 12:9, 13:24, 16:3, 17:5, 18:9, 18:15, 19:17, 20:23, 22:12, 22:14, 23:10, 23:15, 23:23, 25:25, 26:14, 27:6
**MS** [1] - 3:16
**multiple** [1] - 27:7
**mundane** [1] - 11:22

## N

**name** [1] - 3:6
**NASH** [1] - 2:14

**national** [1] - 14:24
**nature** [1] - 11:24
**NEAL** [2] - 2:6, 2:7
**Neal** [1] - 3:13
**neal@ nealweingartlaw. com** [1] - 2:7
**nearly** [1] - 17:10
**need** [5] - 5:9, 5:20, 13:20, 25:7, 25:10
**needs** [1] - 5:14
**negative** [2] - 19:23, 19:24
**negligence** [1] - 15:2
**nevertheless** [1] - 6:14
**Ninth** [6] - 15:4, 20:11, 27:20, 27:21, 28:1, 28:4
**none** [1] - 14:14
**notes** [1] - 27:14
**nothing** [4] - 9:10, 13:12, 15:14, 25:14
**notice** [10] - 17:1, 17:7, 17:12, 17:16, 18:16, 19:1, 19:7, 22:20, 24:2, 26:5
**notices** [5] - 14:12, 20:5, 20:8, 24:20, 24:24
**notified** [1] - 10:16
**notwithstanding** [1] - 22:4
**nullity** [1] - 19:14
**numerous** [1] - 19:20

## O

**objectively** [2] - 15:11, 15:16
**obtain** [3] - 13:10, 14:19, 19:22
**obtained** [2] - 10:17, 14:18
**obtaining** [4] - 7:16, 8:25, 9:10, 14:7
**obviously** [1] - 15:2
**occur** [1] - 15:8
**odd** [1] - 18:5
**OF** [2] - 1:2, 1:14
**Ohio** [1] - 2:13
**once** [1] - 25:1
**one** [14] - 6:9, 6:10, 7:14, 7:22, 9:5, 12:20, 19:23, 19:25, 21:16, 24:6, 24:7, 27:9, 27:13
**online** [6] - 4:15, 4:19, 5:11, 5:21, 5:24, 6:11
**opinion** [4] - 13:1, 26:8, 26:15, 26:16
**opinions** [13] - 17:8, 17:9, 20:3, 21:23,

27:8, 27:12, 27:18, 27:22, 27:25, 28:3, 28:5, 28:8
**opportunity** [9] - 13:22, 20:2, 21:2, 21:20, 22:16, 22:23, 23:17, 23:19, 27:5
**opposing** [1] - 22:21
**opposition** [2] - 13:2, 14:11
**Oral** [1] - 1:15
**order** [2] - 26:9, 26:17
**ordinary** [4] - 7:10, 8:1, 8:4, 11:23
**OREGON** [1] - 1:2
**Oregon** [5] - 1:9, 1:24, 2:8, 2:16, 29:15
**original** [1] - 29:6
**otherwise** [7] - 17:15, 19:12, 20:4, 22:16, 24:3, 24:12, 27:12
**outline** [1] - 14:1
**overshadow** [1] - 13:4
**own** [1] - 24:20

## P

**page** [1] - 7:17
**paper** [2] - 17:17, 17:20
**paragraph** [15] - 4:17, 4:23, 4:24, 8:3, 11:5, 11:7, 11:8, 11:11, 11:13, 11:15, 11:16, 11:17, 11:22
**paragraphs** [7] - 5:23, 6:25, 7:6, 9:22, 9:23, 11:3, 11:4
**parameters** [1] - 13:10
**parsing** [1] - 11:1
**part** [3] - 11:25, 12:16, 25:18
**particular** [2] - 13:23, 23:4
**party** [2] - 24:7, 27:1
**past** [1] - 25:15
**PELUSO** [1] - 2:3
**people** [3] - 9:9, 18:25, 25:22
**performed** [1] - 11:25
**perfunctory** [2] - 17:17, 17:20
**perhaps** [2] - 4:25, 11:12
**period** [5] - 17:13, 18:18, 18:22, 22:22
**permissible** [1] - 14:18
**permitted** [1] - 11:23
**person** [5] - 5:22, 5:25, 6:19, 8:5, 25:18
**persuasive** [5] - 17:10, 19:12, 19:18, 27:20,

27:21
**persuasiveness** [1] - 13:6
**physical** [1] - 6:6
**piece** [2] - 17:17, 17:20
**place** [1] - 19:19
**plainly** [1] - 20:14
**Plaintiff** [2] - 1:7, 2:3
**plaintiff** [10] - 3:11, 3:13, 4:20, 5:17, 6:24, 13:2, 14:11, 16:8, 17:2, 20:1
**plaintiff's** [5] - 3:9, 5:7, 5:10, 12:7, 17:19
**plaintiffs** [1] - 16:15
**plausible** [1] - 10:19
**plead** [1] - 16:15
**pleading** [1] - 16:17
**pleadings** [2] - 5:1, 16:22
**point** [7] - 14:15, 15:3, 17:15, 25:5, 27:7, 27:17, 28:7
**policy** [1] - 14:12
**portion** [1] - 19:13
**portions** [1] - 7:9
**PORTLAND** [1] - 1:3
**Portland** [4] - 1:9, 1:24, 2:8, 2:16
**position** [2] - 15:13, 17:3
**positions** [1] - 14:1
**possible** [1] - 15:9
**potential** [1] - 21:1
**potentially** [3] - 14:7, 17:23, 18:13
**practical** [2] - 21:13, 21:14
**pre** [8] - 17:1, 17:7, 17:12, 17:16, 18:16, 19:13, 22:20, 24:1
**pre-adverse** [8] - 17:1, 17:7, 17:12, 17:16, 18:16, 19:13, 22:20, 24:1
**preface** [1] - 4:10
**preferences** [1] - 14:12
**prepare** [1] - 11:9
**present** [1] - 3:25
**presented** [1] - 5:22
**pretty** [2] - 7:8, 7:20
**previously** [1] - 19:8
**private** [1] - 9:7
**problem** [4] - 8:8, 9:4, 12:25, 13:8
**procedures** [3] - 20:16, 26:10, 26:17
**proceedings** [4] - 4:1, 28:15, 28:18, 29:5
**PROCEEDINGS** [1] -

1:14
**process** [13] - 4:19, 5:11, 5:21, 14:6, 14:17, 15:19, 20:6, 21:15, 21:22, 22:15, 22:18, 24:15, 25:7
**produces** [1] - 24:24
**proper** [1] - 9:5
**prospective** [1] - 17:15
**prove** [1] - 15:1
**provide** [9] - 4:1, 7:17, 17:6, 17:11, 18:21, 18:25, 20:5, 25:19
**provided** [4] - 5:3, 5:24, 8:11, 10:14
**provides** [1] - 24:23, 25:22
**provision** [1] - 26:18
**provisions** [1] - 26:11
**public** [1] - 9:7
**pulling** [1] - 4:15
**purpose** [12] - 7:17, 8:2, 14:18, 17:12, 17:21, 18:16, 19:12, 24:1, 26:5, 26:7, 26:11, 26:18
**put** [1] - 7:1

## Q

**questions** [2] - 4:11, 12:8
**quick** [1] - 27:15
**quickly** [1] - 16:4
**quote** [1] - 26:7
**quote/unquote** [2] - 10:11, 16:12

## R

**raised** [1] - 25:6
**rarely** [1] - 26:24
**rather** [3] - 6:7, 14:15, 14:24
**read** [6] - 7:7, 7:19, 9:5, 24:4, 24:12, 27:10
**reading** [3] - 15:5, 15:7, 26:12
**real** [1] - 27:14
**reality** [1] - 21:14
**really** [2] - 11:6, 22:11
**Realtime** [1] - 29:13
**reason** [2] - 10:21, 26:23
**reasonable** [4] - 17:13, 18:21, 22:25, 26:4
**receipt** [2] - 7:7, 8:7
**received** [2] - 4:6, 22:20
**recently** [1] - 15:4
**recklessness** [3] -

15:1, 15:12, 15:17
**recognized** [1] - 22:22
**recognizes** [1] - 20:17
**record** [7] - 3:6, 3:8, 3:23, 16:20, 24:21, 25:9, 29:4
**rectify** [1] - 21:20
**refer** [2] - 4:16, 24:7
**referenced** [1] - 5:23
**references** [3] - 11:17, 11:20, 14:6
**referring** [2] - 4:17, 6:7
**refers** [1] - 4:23
**regard** [1] - 6:15
**regarding** [3] - 4:22, 19:4, 22:8
**regardless** [1] - 12:19
**Registered** [1] - 29:13
**rehash** [1] - 13:20
**reiterates** [1] - 11:11
**relevant** [1] - 27:23
**relief** [1] - 17:4
**rely** [2] - 28:1, 28:5
**relying** [1] - 15:4
**remember** [3] - 3:24, 4:2, 6:9
**remind** [1] - 3:23
**rendered** [1] - 19:13
**repeatedly** [1] - 17:19
**repeating** [1] - 26:3
**reply** [2] - 4:7, 12:12
**report** [29] - 7:11, 7:16, 8:1, 8:6, 8:25, 9:10, 10:17, 11:18, 12:1, 12:22, 12:24, 13:4, 13:11, 14:19, 16:7, 16:8, 17:14, 19:9, 19:22, 21:3, 21:9, 21:16, 21:17, 24:11, 25:18, 25:20, 26:19
**reported** [1] - 20:18
**reporter** [4] - 3:24, 5:14, 18:6, 18:10
**Reporter** [3] - 1:23, 29:13, 29:13
**REPORTER** [1] - 18:11
**reporting** [3] - 9:1, 9:2, 20:18
**reports** [7] - 7:10, 11:9, 11:19, 11:23, 14:7, 14:8
**require** [1] - 16:17
**required** [1] - 4:20
**requirement** [10] - 7:22, 9:14, 10:15, 12:17, 16:13, 17:16, 18:17, 24:2, 26:5, 26:7
**requirements** [1] - 7:2
**requires** [5] - 8:14, 8:16, 12:4, 12:18,

17:6
**research** [1] - 6:10
**respect** [13] - 4:8, 11:23, 12:8, 12:11, 12:22, 13:17, 13:23, 14:20, 14:23, 16:25, 21:7, 23:14, 28:7
**respond** [2] - 12:7, 16:1, 20:4, 22:16, 23:20, 24:3, 24:13, 27:12
**response** [2] - 4:7, 23:21
**responsibility** [3] - 23:4, 24:22, 27:2
**review** [2] - 22:2, 22:7
**RICHMAN** [2] - 2:15, 3:20
**Richman** [1] - 3:21
**riddled** [2] - 7:9, 7:18
**rights** [2] - 14:20, 15:19
**rise** [1] - 15:17
**rising** [1] - 15:11
**risk** [3] - 15:6, 20:16
**RMR** [1] - 1:23
**Room** [1] - 1:24
**Rule** [1] - 16:15
**rules** [1] - 16:17
**ruling** [1] - 13:7
**runs** [1] - 15:6
**Ryan** [1] - 1:23
**RYAN** [1] - 29:12

## S

**saw** [1] - 6:10
**scope** [2] - 11:16, 11:24
**second** [1] - 16:25
**section** [1] - 4:16
**see** [1] - 6:8
**seek** [1] - 14:23
**seeking** [1] - 17:4
**seeks** [1] - 15:18
**seem** [1] - 24:18
**seizes** [2] - 23:25, 24:3
**send** [1] - 20:6
**sense** [1] - 22:11
**sent** [1] - 19:1
**sentence** [2] - 11:6, 11:12
**separate** [5] - 6:12, 7:17, 7:24, 12:4, 15:20
**separately** [1] - 8:11
**separating** [1] - 7:24
**series** [1] - 4:21
**serves** [1] - 17:20
**session** [1] - 5:25
**sessions** [1] - 5:25
**set** [1] - 26:1
**setting** [1] - 9:14

**shall** [1] - 25:19
**SHOHL** [1] - 2:10
**shoves** [1] - 25:11
**show** [2] - 17:8, 25:10
**showing** [1] - 24:21
**sign** [1] - 15:20
**signature** [5] - 6:6, 6:7, 29:6, 29:7
**signed** [2] - 6:6, 29:7
**significant** [1] - 20:17
**signing** [1] - 29:3
**similarly** [3] - 1:6, 8:4, 16:14
**simply** [5] - 8:24, 9:5, 10:9, 12:14, 16:17
**situated** [1] - 1:6
**situation** [1] - 16:18
**slow** [2] - 20:21, 26:13
**slowly** [1] - 4:2
**someone** [1] - 19:21
**somewhat** [1] - 23:9
**sorry** [5] - 12:3, 18:7, 20:23, 22:12, 26:12
**sort** [3] - 14:8, 19:22, 25:13
**sought** [1] - 20:15
**sound** [1] - 18:5
**source** [1] - 9:8
**speakerphone** [1] - 18:4
**speaking** [2] - 4:3, 5:15
**speaks** [2] - 14:4, 14:21
**specifically** [5] - 8:3, 11:1, 12:15, 13:2, 28:1
**Spokeo** [2] - 20:11, 20:14
**stand** [2] - 7:20, 10:12
**standalone** [12] - 4:9, 7:21, 8:11, 8:21, 8:23, 9:14, 10:12, 10:23, 12:18, 13:17, 16:13, 26:5
**standard** [2] - 15:1, 15:2
**standards** [2] - 14:1, 14:2
**start** [4] - 4:8, 5:7, 13:18, 17:1
**starting** [1] - 3:9
**state** [4] - 3:8, 4:5, 14:11, 27:9
**statement** [4] - 4:11, 14:16, 15:18, 27:12
**statements** [1] - 14:12
**STATES** [2] - 1:1, 1:18
**states** [2] - 13:2, 21:11
**States** [1] - 1:23
**status** [1] - 8:23
**statute** [23] - 7:14, 8:2, 8:14, 9:8, 12:4,

12:18, 13:12, 14:19, 15:6, 15:17, 17:4, 17:6, 17:8, 17:21, 18:20, 19:13, 23:7, 23:8, 25:17, 25:21, 25:22, 26:5, 28:3
**statute's** [1] - 10:15
**statutory** [1] - 14:24
**stenographic** [1] - 29:4
**STEVEN** [1] - 2:3
**Steven** [4] - 3:10, 5:16, 16:3, 23:24
**stop** [2] - 17:25
**store** [2] - 6:18, 6:20
**story** [2] - 17:23, 18:14
**strategic** [1] - 14:23
**Street** [1] - 2:12
**stuff** [2] - 11:18, 14:14
**subsection** [8] - 8:10, 8:12, 9:13, 9:21, 9:23, 10:22, 22:5
**substance** [1] - 6:23
**substantially** [1] - 15:6
**suggested** [2] - 18:21, 20:1
**Suite** [4] - 2:4, 2:8, 2:12, 2:16
**sum** [1] - 23:3
**supposed** [8] - 8:24, 8:25, 11:22, 17:18, 17:19, 24:5, 24:7, 24:8
**Supreme** [1] - 15:4
**SW** [3] - 1:24, 2:8, 2:16
**swoodrow@ woodrowpeluso. com** [1] - 2:4
**Syed** [5] - 13:7, 15:4, 15:9, 20:16, 27:21
**system** [2] - 24:24, 24:25

## T

**tad** [1] - 20:22
**TAYLOR** [1] - 2:15
**Taylor** [1] - 3:21
**taylor.richman@ millernash.com** [1] - 2:15
**technically** [1] - 10:4
**Telephonic** [1] - 1:15
**terms** [2] - 7:2, 23:7
**THE** [37] - 1:1, 1:2, 1:17, 3:5, 3:14, 3:22, 5:12, 5:13, 5:14, 5:18, 6:1, 6:21, 8:9, 9:12, 9:18, 10:1, 10:5, 10:21, 11:10, 12:2, 12:5, 13:15, 15:24, 16:24, 17:25, 18:11, 19:15, 20:21,

22:4, 22:13, 23:2, 23:12, 23:18, 25:16, 26:12, 27:3, 28:9
**themselves** [2] - 16:6, 23:17
**therefore** [1] - 25:7
**they've** [1] - 17:11
**thinks** [1] - 22:23
**third** [7] - 11:5, 11:13, 11:15, 11:17, 24:7, 27:1
**thoughts** [1] - 19:16
**three** [6] - 6:25, 7:6, 23:25, 24:3, 24:4, 26:2
**titled** [1] - 29:5
**today** [4] - 23:16, 28:10, 28:11, 28:15
**together** [1] - 7:19
**touching** [1] - 11:24
**TRANSCRIPT** [1] - 1:14
**transcript** [3] - 4:1, 29:4, 29:6
**true** [2] - 16:9, 29:4
**try** [1] - 4:2
**trying** [4] - 18:24, 24:10, 24:16, 27:14
**turns** [1] - 16:9
**two** [8] - 7:19, 9:22, 9:23, 11:3, 11:4, 12:20, 19:21, 26:2
**type** [1] - 17:4
**types** [1] - 25:6

## U

**ultimately** [2] - 23:5, 25:8
**unaware** [1] - 21:6
**unclear** [1] - 4:25
**under** [7] - 12:23, 13:12, 14:18, 15:19, 17:21, 22:17, 28:11
**undertaken** [1] - 15:20
**UNITED** [2] - 1:1, 1:18
**United** [1] - 1:23
**unreasonable** [3] - 15:11, 15:14, 15:16
**up** [9] - 4:15, 5:9, 7:24, 9:6, 19:8, 26:22, 26:24, 27:16, 27:17
**urge** [1] - 25:15
**urges** [1] - 24:13

## V

**value** [1] - 28:8
**various** [1] - 4:20
**view** [1] - 7:13
**violating** [1] - 23:7
**violation** [4] - 10:9, 10:19, 12:13, 15:8
**voluntary** [1] - 15:21

## W

**waiting** [1] - 22:22
**waiver** [2] - 27:24
**waivers** [1] - 14:13
**walker** [1] - 4:18
**Walker** [10] - 3:7, 5:3,
5:11, 5:20, 6:18, 8:3,
14:17, 14:23, 22:20,
22:22
**WALKER** [1] - 1:5
**Walker's** [4] - 19:24,
21:7, 25:3, 28:2
**Washington** [1] -
29:14
**Weingart** [1] - 3:13
**WEINGART** [3] - 2:6,
2:7, 3:12
**WHITE** [1] - 29:12
**White** [1] - 1:23
**WHITTAKER** [2] -
2:10, 3:16
**Whittaker** [1] - 3:17
**whole** [2] - 25:18,
27:17
**wholistic** [1] - 7:5
**willful** [2] - 15:8, 16:21
**willfulness** [2] - 15:1,
16:14
**Willner** [2] - 13:1, 13:6
**wish** [2] - 26:9, 26:16
**WOODROW** [22] - 2:3,
2:3, 3:10, 5:8, 5:16,
5:19, 7:4, 8:18, 9:16,
9:25, 10:4, 10:6,
11:8, 11:14, 12:3,
16:3, 17:5, 18:9,
18:15, 23:23, 25:25,
26:14
**Woodrow** [8] - 3:10,
5:16, 15:25, 16:3,
18:7, 23:18, 23:24,
27:9
**word** [1] - 24:18
**words** [3] - 23:25,
24:3, 24:4
**writing** [2] - 8:13, 9:6
**written** [1] - 14:1

## Y

**years** [4] - 17:10,
18:18, 19:20, 27:19
**YIM** [1] - 1:17
**YOU** [1] - 1:17
**YOULEE** [1] - 1:17
**yourself** [1] - 4:3